EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>Demandante-recurrido<br><br>v.<br><br>Benjamín Cole Vázquez; Comité Local del Partido Popular Democrático, y otros<br><br>Demandados-peticionarios | Certiorari<br><br>2005 TSPR 46<br><br>163 DPR _____ |

Número del Caso: CC-2000-211

Fecha: 13 de abril de 2005

Tribunal de Apelaciones:

                Circuito Regional IV Aguadilla y Mayagüez

Juez Ponente:
           Hon. Roberto L. Córdova Arone


Abogados de la Parte Peticionaria:

                Lcdo. Pedro E. Ortiz Álvarez
                Lcdo. Alberto J. Castro Laboy
                Lcdo. Arquelio Rivera Rodríguez

Oficina del Procurador General:

                Lcda. Rosa N. Russe García
                Subprocuradora General


Materia: Cobro de Fondos Públicos


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Demandante-recurrido

       v.                       CC-2000-211       CERTIORARI

Benjamín Cole Vázquez; Comité
Local del Partido Popular
Democrático, y otros

    Demandados-peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 13 de abril de 2005

Como resultado de una investigación realizada por la Oficina del Contralor,[1] el Estado Libre Asociado de Puerto Rico radicó una demanda en cobro de fondos públicos contra el Comité Local Municipal del Partido Popular Democrático en Mayagüez y contra el entonces alcalde de dicho Municipio, Sr. Benjamín Cole Vázquez, en su carácter personal y como presidente de dicho Comité.[2]

---

[1] Dicha investigación fue realizada durante el periodo de 12 de agosto de 1980 al 10 de febrero de 1986. Se rindió el Informe completo sobre la investigación el 11 de octubre de 1988, Informe de Intervención M-89-1. Apéndice, págs. 82-99.

[2] Demanda original de 18 de marzo de 1991.

Basándose en el informe del Contralor, el E.L.A. alegó que el empleado municipal Miguel Galo Perocier estuvo realizando labores como encargado del Comité Local Municipal del P.P.D. en Mayagüez mientras cobraba sueldos del referido Municipio como Auxiliar General de Mantenimiento y Conservación de Edificios y como Pintor II.[3] Asimismo, alegó que mientras el señor Galo Perocier estuvo realizando labores en dicho comité político, recibió sueldos, bonos y beneficios ordinarios --tales como licencias de vacaciones y enfermedad-- sufragados todos con fondos del Municipio. De este modo, el E.L.A. reclamó el reembolso solidario al erario público de los fondos pagados al empleado. Finalmente, solicitó del Tribunal de Primera Instancia que declarara que las acciones de los demandados constituyeron una práctica ilegal e indebida al utilizar fondos públicos para propósitos privados, todo ello en contravención a las disposiciones del Artículo VI, Sección 9, de la Constitución del Estado Libre Asociado de Puerto Rico.

Como resultado de dicha reclamación, los demandados presentaron demanda contra tercero en contra del Partido Popular Democrático, a nivel central, (en adelante el

---

[3] Específicamente se alegó que estuvo realizando dichas labores desde el mes de junio de 1980 a junio de 1986, incluso, sábados y domingos, de manera ininterrumpida. Véase, además: Informe de Intervención M-89-1 de 11 de octubre de 1988 sobre el Municipio de Mayagüez realizado por la Oficina del Contralor de Puerto Rico. Apéndice, págs. 82-99.

P.P.D.) imputándole toda responsabilidad derivada por los actos alegados en la demanda original. Ello con el propósito de que el P.P.D. respondiera directamente al E.L.A. por cualquier reclamación que éste alegara y en su día probara.

Específicamente, alegaron que no tenían personalidad jurídica independiente de la del mencionado partido político y que, por consiguiente, toda responsabilidad ante los hechos alegados sería del partido o comité central del P.P.D. Adujeron que las alegaciones imputadas por la parte demandante, de probarse en su día, fueron consecuencias previsibles de los actos autorizados por el comité central del partido, ya que el comité municipal del partido en Mayagüez existe por necesidad y para beneficio de dicho comité central. Esta demanda fue desestimada mediante sentencia parcial debido a que los terceros demandantes nunca diligenciaron los respectivos emplazamientos dentro del término reglamentario.[4]

Así las cosas, el 12 de agosto de 1994, el E.L.A. radicó demanda enmendada para incluir al Partido Popular Democrático como parte demandada. Luego de las autorizaciones correspondientes de parte del tribunal, el 28 de diciembre de 1995, el E.L.A. radicó una segunda demanda enmendada para desistir de la reclamación en contra

---

[4] Sentencia Parcial, Tribunal de Primera Instancia, de fecha de 12 de noviembre de 1993, archivada en autos y notificada la misma el 17 de noviembre de 1993. Apéndice, pág. 193.

del señor Cole Vázquez (Sucesión Cole Vázquez) en su carácter personal.[5] Se reprodujeron las alegaciones en su contra, pero esta vez en su carácter oficial y se incluyó como codemandado al Municipio de Mayagüez.

En esta última demanda se alegó, en síntesis, que al señor Galo se le pagó con fondos municipales por una jornada de trabajo rendida en labores propias del Comité Municipal, todo ello por órdenes e instrucciones del entonces alcalde, señor Cole Vázquez. Se planteó, además, que dichas labores no se realizaron para beneficio del Municipio, sino para beneficio del Alcalde, del comité local y del P.P.D. a nivel central.

La parte demandante le imputó a estos últimos haberse beneficiado de los actos culposos y/o negligentes del Municipio, constituyendo tal acción un enriquecimiento injusto de parte del mencionado partido político y en perjuicio del E.L.A. De igual manera, le imputó al Municipio haber actuado de manera ilegal y fraudulenta al pagar salarios y beneficios a un empleado que no le rendía labor alguna y, en la alternativa, le imputó haber actuado negligentemente al no tomar las medidas correspondientes para que este tipo de acción no se llevara a cabo. En consecuencia, se alegó que tanto el P.P.D. como el Municipio le eran solidariamente responsables al erario

---

[5] El Sr. Cole Vázquez falleció el día 30 de enero de 1993, y en consecuencia se había realizado la debida sustitución de la parte demandada.

público de la suma de cuarenta y cuatro mil doscientos ochenta dólares ($44,280.00), cantidad monetaria equivalente a los salarios pagados de manera ilegal al señor Galo Perocier.

Luego de varios trámites procesales, el 30 de mayo de 1996, el Municipio presentó su contestación a la demanda y levantó como defensas afirmativas que en la misma no se aducían hechos constitutivos de una causa de acción en su contra, que estaba prescrita y que no se benefició en forma alguna de los hechos alegados en la demanda. Adujo que, en todo caso, debería figurar como parte demandante y no como parte demandada.

El P.P.D., por su parte, radicó su contestación el 26 de septiembre de 1996. En la misma negó toda responsabilidad y levantó como defensas afirmativas, entre otras, que la reclamación en su contra estaba prescrita, que el partido, a nivel central, no tenía conocimiento de los actos que se alegaban en la demanda, por lo que no pudo haber consentido a que éstos se llevaran a cabo y que la reclamación no justificaba la concesión de un remedio.

Para el momento en que el P.P.D. contestó la referida demanda enmendada, el E.L.A. ya había radicado una primera solicitud de sentencia sumaria.[6] Acompañó a dicha moción el Informe del Contralor de Puerto Rico; declaraciones juradas del señor Galo Perocier; y cinco declaraciones juradas de

empleados y ex empleados municipales.[7] De este modo, el
E.L.A. solicitó del tribunal que dictara sentencia en
contra de los codemandados —-P.P.D. y el Municipio-- por el
uso ilegal e indebido de fondos públicos y que ordenara la
inmediata restitución de dichos fondos al Estado.

En su solicitud el E.L.A. alegó que no existía
controversia de hechos en cuanto a la utilización de los
servicios de empleados y de fondos públicos en beneficio
y/o a favor del señor Cole Vázquez y del Partido Popular
Democrático sin autorización de ley para ello y en clara
contravención a la disposición constitucional que
reglamenta el uso estricto de los bienes y fondos públicos.
El Tribunal de Primera Instancia no se pronunció con
relación a la referida moción de sentencia sumaria.

El 19 de julio de 1996, el E.L.A. radicó una segunda
moción de sentencia sumaria. En la misma incluyó los
documentos presentados anteriormente y añadió una
declaración jurada del Director de la División de
Municipios de la Oficina del Contralor, copia de los

---

[6] Moción de Sentencia Sumaria de 27 de septiembre de 1995; presentada ante el tribunal de instancia el día 4 de octubre de 1995.

[7] Declaraciones juradas prestadas por el Sr. Miguel Galo Perocier; su supervisor, Sr. René Ramos Muñoz; por el Ingeniero Auxiliar del Departamento de Obras Públicas del municipio, Sr. Héctor Rafael Bass Pineda; por el Director de Obras Públicas del municipio desde mayo de 1982 a septiembre de 1986, Sr. Bernabé Pérez Rodríguez; por la Oficinista, Sra. Norma Rodríguez; por la secretaria del Ing. Bass, Sra. Naida Rivera González; y por el Director en la Oficina del Contralor de Puerto Rico, Eduard Rivera Correa. Apéndice, págs. 115-144.

cheques de pago de nómina y de las tarjetas de asistencia ponchadas por el señor Galo Perocier, junto con varios cheques endosados por éste.

El P.P.D. radicó escrito en oposición a dicha sentencia sumaria el 16 de diciembre de ese mismo año. No acompañó documento alguno con la misma. Sostuvo que la evidencia documental presentada por el E.L.A. no sostenía su solicitud de que se dictara sentencia sumariamente, ello por razón de que las alegaciones de la parte demandante, acerca del beneficio obtenido por el partido, carecían de prueba que las fundamentara. Arguyó que tal hecho impedía que se dispusiera del caso por la vía sumaria y que, en consecuencia, dicha evidencia debía ser cuestionada y dirimida en una vista en su fondo. Asimismo, reiteró la alegación de que desconocía los hechos imputados y levantó, nuevamente, la defensa sobre prescripción.

En cuanto a este último aspecto, el P.P.D. sostuvo que la presente acción no versa sobre una reclamación por enriquecimiento injusto, sino sobre actos u omisiones culposos o negligentes al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, cuyo término de prescripción es de un (1) año, contado a partir del momento en que la persona agraviada adquiere conocimiento sobre los daños que le han sido causados. 31 L.P.R.A. sec. 5298. En consecuencia, alegó que como la investigación realizada por la Oficina del Contralor había culminado con la preparación de un informe --fechado de 11

de octubre de 1988-- para tal momento la parte demandante sabía, o debió haber sabido, sobre los acontecimientos del caso. De este modo, alegó que la demanda presentada en su contra el 26 de diciembre de 1995,[8] fue radicada fuera del término prescriptivo de un (1) año.

El Tribunal de Primera Instancia acogió la solicitud de sentencia sumaria del E.L.A. y procedió a dictar sentencia en contra de los codemandados el 30 de junio de 1999, archivándose en autos copia de la misma el 31 de agosto de ese mismo año. El referido foro determinó que la documentación presentada por el E.L.A., en apoyo de su solicitud de sentencia sumaria, era abrumadora y que sostenía plenamente las alegaciones en cuanto a los desembolsos realizados por el Municipio a favor del señor Galo y las labores que éste realizó en el referido Comité Municipal del P.P.D. Además, concluyó que durante el periodo de tiempo transcurrido entre junio de 1980 a junio de 1986, el Municipio de Mayagüez le pagó al señor Galo Perocier la suma de $44,280.00 sin que dicho empleado hubiese prestado labor, trabajo o servicio alguno para el referido Municipio, ni en horas laborables ni fuera de horas laborables; que, por el contrario, dicha persona

---

[8] Entendemos pertinente señalar que dicha demanda enmendada para incluir al P.P.D. como demandado, fue radicada el 12 de agosto de 1994 y no el 26 de diciembre de 1995, como alega dicha parte.  A los fines de su alegación sobre prescripción, el término de un (1) año para iniciar reclamaciones al amparo del Artículo 1802, ante, había transcurrido a fines de considerar tanto una como otra fecha para computar dicho término.

realizó trabajo y funciones exclusivamente para el comité local del partido, sin haber el Municipio, no obstante sufragar dicha cantidad de dinero, recibido beneficio alguno por ello.

El referido tribunal sostuvo que para la fecha en cuestión el señor Cole fungía como presidente del Comité Local del P.P.D. y que, conforme al Reglamento Oficial del P.P.D., era función del Presidente establecer, operar y hacer cumplir las funciones del comité local del P.P.D. en el Municipio. Señaló que el P.P.D., como partido político organizado en virtud de la Ley Electoral de Puerto Rico, era el ente con capacidad jurídica para demandar y ser demandado ya que los comités municipales y locales de un partido político no tienen personalidad jurídica separada del partido debidamente inscrito.[9] Por último, sostuvo que dichos comités existen por necesidad y para beneficio de los partidos políticos, siendo así entidades subordinadas al partido principal y representantes del mismo en el municipio.

En consecuencia el foro de instancia concluyó que el P.P.D. se había beneficiado de los actos del señor Cole Vázquez, como presidente del comité municipal del P.P.D. en Mayagüez, en contravención a la doctrina del enriquecimiento injusto. De este modo, el referido foro descartó la procedencia de toda causa de acción en daños y perjuicios por actos y omisiones ilícitas y negligentes.

Dispuso que la restitución que produce la acción por enriquecimiento injusto, dirigida a restablecer el equilibrio entre los dos patrimonios afectados mediante el desplazamiento de una cantidad de dinero equivalente a la suma por la cual una de las partes se enriqueció injustamente, es una distinta a la indemnización que se ordena en virtud de una acción en daños y perjuicios por actos ilícitos.

Por otra parte, el foro de instancia señaló que el término prescriptivo para la causa de acción en el caso de autos, para reclamar el cobro de fondos públicos por razón de pagos ilegales y fraudulentos, es de quince (15) años por tratarse la misma de una reclamación análoga a la de cobro de dinero, descartando así toda defensa relativa a la prescripción de la acción.[10]

Finalmente, el foro primario le ordenó al Municipio de Mayagüez y al P.P.D. pagar al E.L.A., de manera solidaria, la suma de cuarenta y cuatro mil doscientos ochenta dólares ($44,280.00), cantidad monetaria que

---

[9] 16 L.P.R.A. sec. 3101 *et seq.*

[10] Dispone el Artículo 1864 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5294, que las acciones personales que no tengan señalado término especial de prescripción, prescriben a los quince años.

Este foro ha resuelto que "la acción estrictamente para recobrar fondos públicos obtenidos ilícitamente no surge bajo el Artículo 1802 del Código Civil, *supra* . . . Se trata más bien de una acción de naturaleza personal. . . como la que procede para vindicar un enriquecimiento sin causa." E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992).

recibió como salario el señor Galo Perocier procedente de fondos públicos municipales, más costas, gastos y honorarios de abogado;[11] impuso responsabilidad solidaria al Municipio en conjunto con el P.P.D., al amparo de los Artículos 201 y 216 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4352, 4391, respectivamente.[12]

---

[11] En cuanto al Municipio, el foro de instancia indicó que la demanda por negligencia al no tomar las medidas necesarias para evitar la presente situación estaba prescrita. En cuanto a la alegación de que el Municipio actuó de forma ilegal y fraudulenta al pagar salarios y otros beneficios a un empleado que no le rendía labor alguna, dicho foro resolvió que el señor Galo era empleado municipal, pero que por instrucciones del Alcalde prestaba servicios en el comité local del P.P.D., recibiendo salario pagado por el Municipio sin éste beneficiarse de manera alguna. No obstante, le impuso responsabilidad solidaria en conjunto con el P.P.D., al amparo de los Artículos 201 y 216 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4352, 4391, respectivamente. Determinó que dicha acción no prescribía  y que a esos delitos por pagos
ilegales con fondos públicos le aplicaba la doctrina de enriquecimiento injusto.

[12] El Artículo 201 del Código Penal de Puerto Rico, ante, sobre aprovechamiento por funcionario de trabajos o servicios públicos, dispone, en lo pertinente:

> Todo funcionario o empleado público que empleare en beneficio suyo o de un tercero trabajos o servicios pagados por el Gobierno del Estado Libre Asociado de Puerto Rico, los municipios, ...será sancionado con Pena de reclusión por un término fijo de tres (3) años... Énfasis nuestro.

Por otra parte, el Artículo 216, ante, sobre delitos contra fondos públicos, dispone, en lo pertinente:

> Será sancionado con pena de reclusión ... todo funcionario, empleado público o toda persona encargada de recibir, guardar, traspasar, desembolsar o en cualquier forma afectar fondos públicos, que realizare cualesquiera siguientes actos:

**(Continúa . . .)**

Inconforme con tales determinaciones, el Municipio de Mayagüez acudió ante el entonces Tribunal de Circuito de Apelaciones mediante recurso de apelación.[13] Del mismo modo, el P.P.D. recurrió ante el referido foro apelativo intermedio en revisión de la sentencia sumaria dictada en su contra por el foro de instancia. En síntesis, alegó que no procedía dictar sentencia sumaria en el caso de autos por existir cuestiones de credibilidad que sólo podían dirimirse luego de celebrada una vista en su fondo y que no procedía adjudicar responsabilidad solidaria en su contra por actos imputables al presidente del comité municipal. Asimismo, alegó que no procedía aplicar la doctrina del enriquecimiento injusto al caso de autos, por razón de que la causa de acción correspondiente era una en daños y perjuicios al amparo del Artículo 1802 del Código Civil, ante. Finalmente, adujo que por tratarse de una acción en daños la misma estaba prescrita.

---

(a) Sin autoridad legal se los apropiare en todo o en parte, para beneficio particular o el de otra persona. Énfasis nuestro.

. . .

[13] En su escrito el Municipio le imputó al foro de instancia haber incidido al:
...interpretar que los Artículos 201 y 216 del Código Penal de Puerto Rico, le imponen responsabilidad a los Municipios y en este caso, al Municipio de Mayagüez;
...aplicar la doctrina del Enriquecimiento Injusto contra el Municipio de Mayagüez;
...resolver la Moción de Sentencia Sumaria en contra del Municipio de Mayagüez.

Mediante sentencia de 18 de enero de 2000, el foro apelativo intermedio revocó la imposición de responsabilidad en contra del Municipio de Mayagüez. El referido foro entendió que no procedía aplicar la doctrina de enriquecimiento injusto contra dicha parte, ya que ésta fue, precisamente, la que se empobreció como resultado de las actuaciones del Alcalde y en ningún momento se enriqueció de los pagos hechos a favor del señor Galo Perocier. En cuanto a la aplicación de los Artículos 201 y 216 del Código Penal al caso de autos, el foro primario determinó que éstos no proceden en contra de instituciones, como lo son el Municipio o el Gobierno, sino contra personas naturales y no jurídicas.

Por otra parte, el foro apelativo intermedio confirmó la sentencia sumaria dictada por el tribunal de instancia en cuanto a la imposición de responsabilidad en contra del P.P.D. a nivel central. Al fundamentar su conclusión, y refiriéndose específicamente a la procedencia de la solicitud de sentencia sumaria, el referido foro señaló que los documentos y declaraciones juradas presentadas por el E.L.A. en apoyo de su solicitud respaldaban totalmente, y establecían incontrovertiblemente, las alegaciones contenidas en la demanda enmendada.[14] En consecuencia,

---

[14] Dicha aseveración la hizo como consecuencia de un examen que hiciera el foro apelativo intermedio de las declaraciones juradas prestadas por el Sr. Miguel Galo Perocier; su supervisor, Sr. René Ramos Muñoz; por el Ingeniero Auxiliar del Departamento de Obras Públicas del municipio, Sr. Héctor Rafael Bass Pineda; por el Director

**(Continúa . . .)**

sostuvo que no existía controversia de hecho alguna que tuviera que dirimirse en una vista en su fondo y que, a la luz de los documentos sometidos, sólo restaba aplicar el derecho.

Citando la Ley Electoral de Puerto Rico, ante, el referido tribunal concluyó que un partido político organizado como el P.P.D. tiene capacidad para demandar y ser demandado, contrario a los comités locales o municipales, que no ostentan personalidad jurídica separada e independiente del partido debidamente inscrito.[15] De este modo, confirmó la determinación del foro de instancia en cuanto a que los comités municipales existen para el beneficio del partido central y funcionan como subsidiarios del mismo y que, en tal capacidad, el P.P.D. a nivel central se había enriquecido de los servicios de una

_____

de Obras Públicas del Municipio desde mayo de 1982 a septiembre de 1986, Sr. Bernabé Pérez Rodríguez; por la Oficinista, Sra. Norma Rodríguez; por la secretaria del Ing. Bass, Sra. Naida Rivera González; y por el Director en la Oficina del Contralor de Puerto Rico, Eduard Rivera Correa.

El foro apelativo sostuvo que dichas declaraciones nunca fueron refutadas por la apelante, P.P.D., y que las mismas establecían claramente la participación directa del alcalde de Mayagüez al permitirle al señor Galo Perocier, realizar labores a favor del comité local del P.P.D. a costa del Municipio.

Dispuso, además, que nunca antes el apelante, P.P.D., había planteado la alegada controversia relacionada a la credibilidad de las declaraciones del señor Galo Perocier, en su oposición a la solicitud de sentencia sumaria y que era ante dicho foro donde por primera vez lo levantaba como error.

persona cuyo salario fue sufragado por el Municipio al cual estaba adscrita como empleado.

Por otra parte, el foro apelativo intermedio señaló que en ningún momento se negó el hecho de que el Municipio se había hecho responsable por dichos pagos; que la prueba presentada por el E.L.A. claramente demostró el periodo de tiempo durante el cual el señor Galo prestó servicios al comité, el lugar donde los prestaba, y quién le hacía los pagos. De este modo, concluyó que el tribunal de instancia aplicó correctamente la doctrina de enriquecimiento injusto al caso de autos, pues el partido se había visto beneficiado a través de su comité local. Finalmente, determinó que, siendo aplicable al caso de autos el término prescriptivo de quince (15) años, análogo a las acciones personales en cobro de dinero que no tienen término señalado en la ley, la demanda no estaba prescrita.

Inconforme, el P.P.D. acudió --vía *certiorari*-- ante este Tribunal. Alega que procede revocar la sentencia emitida por el referido foro apelativo, confirmatoria la misma de la emitida por el foro de instancia, debido a que dicho foro apelativo incidió al:

> ... confirmar que procedía dictar sentencia sumaria a favor de los demandantes, aun cuando existe una cuestión de credibilidad en las declaraciones juradas que sólo puede dirimirse luego de celebrado el juicio;

> ... confirmar la imposición de responsabilidad solidaria al PPD por los supuestos actos

---

[15] Véase: 16 L.P.R.A. secs. 1301 *et. seq.*, P.S.P. v. E.L.A., 107 D.P.R. 590 (1978).

imputables al presidente del comité municipal del partido;

... determinar que en el caso aplica la doctrina del enriquecimiento injusto;

... confirmar la sentencia en una causa de acción que estaba prescrita.

Mediante Resolución a esos efectos, el 14 de abril de 2000, denegamos dicha petición de *certiorari*. Inconforme con tal determinación, el P.P.D. presentó oportuna moción de reconsideración, la cual denegamos mediante Resolución emitida el 19 de mayo de 2000. Así las cosas, el peticionario radicó una segunda moción de reconsideración. Examinada dicha moción, mediante Resolución de 9 de junio de 2000, decidimos reconsiderar nuestra denegatoria <u>procediendo a expedir el recurso</u>. Contando con la comparecencia de ambas partes, y estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

En su primer señalamiento de error, el peticionario alega que el tribunal apelativo intermedio incidió al concluir que en el caso de autos procedía, conforme a derecho, dictar sentencia sumaria. Veamos.

En reiteradas ocasiones hemos expresado que la sentencia sumaria es un mecanismo procesal extraordinario y discrecional que tiene como propósito facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y

que, por lo tanto, no ameritan la celebración de una vista en su fondo. Management Administration Services, Corp. v. E.L.A., res. el 29 de noviembre de 2000, 2000 T.S.P.R. 174; Hernández Villanueva v. Hernández, res. el 27 de enero de 2000, 2000 T.S.P.R. 14. La utilización de dicho mecanismo permite dictar sentencia sin la necesidad de celebrar una vista evidenciaria, cuando de los documentos no controvertidos que se acompañan en la solicitud de la misma, y de la totalidad de la evidencia presentada en autos, surge que no existe controversia sobre los hechos materiales, por lo cual sólo resta y corresponde aplicar el derecho. Partido Acción Civil v. Estado Libre Asociado de Puerto Rico , res. el 25 de febrero de 2000, 2000 T.S.P.R. 29; Medina v. M,S, & D Química P.R. Inc., 135 D.P.R. 716 (1994).

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, regula todo lo concerniente a dicho mecanismo procesal. Específicamente, la Regla 36.3, ante, dispone que se dictará sentencia sumaria "inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia a favor de la parte promovente." Management Admnistration v. E.L.A., ante; Rivera v. Superior Packaging, 132 D.P.R. 115 (1992). Sólo procederá dictar

sentencia sumariamente cuando surja claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y cuando el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. Management Administration Services, ante; Rivera Rodríguez v. Dept. Hacienda, res. el 17 de septiembre de 1999, 99 T.S.P.R. 139; Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986).

Por otro lado, no procede declarar con lugar una moción solicitando que se dicte sentencia sumaria cuando existe una disputa de hechos bona fide. Cuadrado Lugo v. Santiago, 126 D.P.R. 272 (1990). Ésta sólo debe dictarse en casos claros y cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte que la solicita y a favor de la que se opone a la concesión de la misma. Córdova Ramos v. Larín Herrera, res. el 2 de junio de 2000, 2000 T.S.P.R. 79; Audiovisual Lang. v. Sistema Est. Natal Hermanos, 144 D.P.R. 563 (1997).

Como regla general, la parte que solicita la sentencia sumaria está en la obligación de demostrar, en primera instancia, la inexistencia de una controversia real sustancial en cuanto a todo hecho material que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. Córdova Ramos v. Larín Herrera, ante. De esa manera, el tribunal podrá considerar prueba que, de

no ser adecuadamente refutada, permita que se disponga del pleito a favor de alguna de las partes.

Si la parte opositora desea defenderse, tiene que demostrar que existe controversia en cuanto a los hechos presentados por la parte promovente. *Ibíd.* Para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar, como regla general, contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Rivera v. Superior, ante; Córdova Ramos v. Larín Herrera, ante. Si se cruza de brazos, corre el riesgo de que le dicten sentencia en su contra sin juicio en su fondo. Cuadrado Lugo v. Santiago, ante; Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991). No basta, pues, con presentar meras alegaciones para controvertir los hechos materiales que la parte promovente sostiene no están en controversia. Audiovisual Lang. v. Est. Natal, ante.

Al considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas presentadas por la parte promovente. Piñero González v. A.A.A., res. el 23 de octubre de 1998, 98 T.S.P.R. 141. Toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma. Management Admnistration Services, ante.

Cuando, entonces, de los documentos no controvertidos que se acompañan surge que no existe una legítima disputa de hecho a ser dirimida, que sólo resta aplicar el derecho, y que no se ponen en peligro los intereses de las partes, se dictará sentencia sin necesidad de que se celebre una vista en los méritos. Audiovisual Lang. v. Est. Natal, ante.

Así pues, tomando en consideración que la sentencia sumaria es un remedio extraordinario y que su concesión está a discreción del tribunal, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990); Córdova Ramos v. Larín Herrera, ante; Management Administration Services, ante.

De manera que, al dictar sentencia sumariamente, el tribunal: (a) examinará los documentos que acompañan la moción solicitando la misma, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (b) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Management Administration Services, ante; PFZ Properties v. General Accident, 136 D.P.R. 881 (1994); Corp. Presiding Bishop, ante.

II

Con estos principios en mente, analizamos si el foro de instancia incidió al resolver que no existía controversia real y sustancial alguna sobre los hechos materiales del caso que impidiera dictar sentencia sumaria a favor del demandante.

En la solicitud de sentencia sumaria presentada por el E.L.A., se planteó que, de conformidad con el mandato constitucional otorgado a la Oficina del Contralor de Puerto Rico, dicha Oficina llevó a cabo una investigación sobre el Municipio de Mayagüez;[16] que según consta en el documento, dicha investigación cubrió el periodo de tiempo entre el 12 de agosto de 1981 al 10 de febrero de 1986, culminando la misma en un escrito titulado Informe de

---

[16] La Ley Núm. 17 de 8 de mayo de 1973, según enmendada por la Ley Núm. 51 de 7 de junio de 1977, le concede facultad a la Oficina del Contralor, adscrita al Departamento de Justicia, de instar acciones civiles ante los tribunales que surjan como resultado de intervenciones del Contralor en relación con los ingresos, cuentas, y desembolsos de los municipios. Las investigaciones del Contralor están revestidas del más alto interés público y van dirigidas a fomentar la más sana administración de los fondos públicos.

De acuerdo a la ley que crea la Oficina del Contralor, Ley Núm. 9 de 24 de julio de 1952, dicha Oficina tiene la facultad de, a través sus auditores y empleados de intervenir, supervisar, y de ser necesario, por descubrirse irregularidades en lo relativo al uso de fondos públicos, referir al Secretario de Justicia para que se tomen las acciones legales pertinentes.

El Contralor fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si se han hecho de acuerdo a la ley. Artículo III, Sección 22 de la Constitución.

Intervención M-89-1 de fecha de 11 de octubre de 1988; que entre los hallazgos contenidos en dicho Informe se señala que el empleado municipal Miguel Galo Parocier estuvo desempeñándose como encargado de un comité político durante las horas laborables comprendidas desde junio de 1980 a junio de 1986 y que mientras esto sucedía dicho empleado devengó salarios sufragados por el municipio de Mayagüez como Auxiliar General de Mantenimiento y Conservación de Edificios y como Pintor II.

Se acompañó a dicha solicitud de sentencia sumaria el referido Informe conteniendo el aludido hallazgo, junto con los siguientes documentos:

i)      Declaración jurada tomada por el auditor, Sr. Eddie Cruz, al Sr. Miguel A. Galo los días 29 y 30 de septiembre de 1986, donde expresó haber trabajado para el municipio de Mayagüez como Pintor, Encargado del Comité Popular, y como Guardián; expresó haber realizado dichas labores desde el 1980 al 1986, durante todos los días, y señaló que los fondos para el pago de su sueldo provenían del Municipio;

ii)     Declaración jurada prestada por el señor Galo Perocier ante la Fiscal Elvira Cora Ramsey, donde reiteró que había realizado labores en forma continua para el Comité Político del P.P.D. en Mayagüez durante horas laborables. Expresó, además, que las tarjetas de asistencia se las llenaban a mano en el Departamento de Obras Públicas municipal indicando que estaba realizando labores de pintor. Nuevamente especificó que recibía su sueldo como empleado de parte del Municipio;

iii)    En esta última declaración se describieron ciento cincuenta y cinco (155) cheques hechos a favor y en beneficio del señor Galo y endosados por éste para cambio. Estos cheques fueron debidamente identificados por el señor Galo ante la fiscal Ramsey;

iv)     Declaración jurada prestada por el Ing. Héctor Rafael Bass Pineda, ayudante general del Departamento de Obras Públicas Municipal, ante la Fiscal Elvira Cora Ramsey, donde dicho empleado expresó que era de conocimiento general el hecho de que el señor Galo atendía el comité político del P.P.D. en horas laborables; declaró que durante ese tiempo, la asistencia del señor Galo se registraba mediante tarjetas de asistencia preparadas a mano por secretarias del referido Departamento de Obras Públicas;

v)      Declaración jurada del Sr. Bernabé Pérez Rodríguez, quien se desempeñó como Director de Obras Públicas del Municipio desde mayo de 1982 hasta septiembre de 1985. Éste declaró que el señor Galo era uno de los obreros del Departamento y que estaba encargado de las facilidades del Comité Político del P.P.D. Expresó que lo observó allí personalmente durante horas laborables e identificó cincuenta (50) tarjetas de asistencia pertenecientes al señor Galo;

vi)     Declaración jurada de la Sra. Norma Rodríguez Pérez, Oficinista Dactilógrafa II del Municipio. Declaró que conocía al señor Galo por razón de que éste trabajaba en Obras Municipales y que tenía conocimiento de que éste trabajó durante horas laborables en el referido comité;

vii)    Declaración jurada prestada por la Sra. Naida Rivera González, Oficinista I del Municipio y secretaria del Ing. Héctor Bass. Ésta declaró tener conocimiento acerca de que el Sr. Galo se desempeñaba como pintor en el Municipio;

viii)   Declaración jurada prestada por el Sr. Eduard Rivera Correa, Director de la División de Municipios en la Oficina de la Contralor de Puerto Rico. Declaró que como parte de las funciones conferidas a la Oficina del Contralor, se llevó a cabo una investigación sobre el Municipio de Mayagüez. Que de los hallazgos obtenidos en dicha investigación, surgió que el Sr. Galo aparecía como empleado del Departamento de Obras Públicas del Municipio, cuando en realidad se desempeñaba como encargado del aludido comité político, y que de conformidad con la labor de auditoría realizada se le pagó la suma de $44,280.00 en forma de salarios y aportaciones.

A base de dicha documentación, la parte demandante alegó que no existía controversia de hechos en cuanto a que el señor Galo Perocier era un empleado del Municipio cuando, en realidad, se dedicó a atender y trabajar en el Comité Local del P.P.D. en Mayagüez; que a partir de junio de 1980 a junio de 1986, el señor Galo Perocier recibió la cantidad de $44,280.00, sufragada dicha cantidad con fondos públicos provenientes del Municipio, sin haberse dicho Municipio beneficiado por la labor del señor Galo; que el P.P.D. se benefició de la labor del señor Galo al éste estar encargado del referido comité y que, en su capacidad de partido político organizado, a base a la Ley Electoral de Puerto Rico, era responsable del uso ilegal de los fondos públicos con los que se le pagó a Galo Perocier.

Por su parte, y como señaláramos anteriormente, el P.P.D. no presentó declaración o documento alguno en su escrito en oposición. En dicho escrito, el P.P.D. se limitó a alegar que la evidencia documental presentada por el E.L.A. no sostenía su solicitud de que se dictara sentencia sumariamente, ello por razón de que las alegaciones de la demandante acerca del beneficio obtenido por el partido carecían de prueba que las fundamentara. Por otro lado, alegó que desconocía los hechos imputados y que la causa de acción en su contra estaba prescrita. Como argumento en apoyo de la defensa de prescripción, sostuvo que la presente acción no versa sobre una reclamación por enriquecimiento injusto y sí sobre los actos u omisiones

culposos o negligentes al amparo del Artículo 1802 del Código Civil, cuyo término de prescripción es de un (1) año contado a partir del momento en que la persona agraviada adquiere conocimiento sobre los daños que le han sido causados; y que, en consecuencia, la acción se presentó fuera del término dispuesto por ley.

Como expresáramos anteriormente, la Regla 36.5 de Procedimiento Civil, ante, dispone que ante una solicitud de sentencia sumaria la parte que se opone a la misma no puede descansar exclusivamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma detallada y específica, exponiendo los hechos pertinentes que demuestren que existe una controversia real que deba dirimirse en un juicio. En otras palabras, para derrotar una moción de sentencia sumaria, no basta con presentar meras alegaciones. Córdova Ramos v. Larín Herrera, ante; Audiovisual Lang. v. Sist. Est. Natal, ante. En consecuencia, forzoso es concluir que, en el presente caso, el P.P.D. no cumplió con su obligación procesal de controvertir las aseveraciones, documentos, hechos y declaraciones presentadas por el E.L.A. pues no presentó documento alguno para refutar los hechos y aseveraciones expuestos por el E.L.A. en su solicitud de sentencia sumaria.

III

En segundo término, el peticionario alega que el Tribunal de Apelaciones incidió al confirmar la imposición

de responsabilidad solidaria al P.P.D, por actos imputables al presidente del comité municipal del partido, ello debido a que el P.P.D., a nivel central, alegadamente se había enriquecido injustamente de los servicios realizados por el señor Galo Perocier sin haber sufragado en cantidad alguna el sueldo devengado por dicho empleado.

## A

La doctrina de enriquecimiento injusto es casi tan antigua como el derecho mismo. Es un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de justicia. Silva v. Comisión Industrial, 91 D.P.R. 891 (1965). En tal sentido, es un principio general del derecho fundado en la equidad que informa todo el ordenamiento jurídico. Ortiz Andujar v. E.L.A., 122 D.P.R. 817 (1988). Al igual que otras acciones basadas en los principios de equidad, la reclamación por enriquecimiento injusto sólo procederá cuando no exista ley que provea para otra causa de acción. Ibíd.[17] "De enriquecimiento injusto se habla propiamente cuando la ley no ha previsto una situación en la que se produce un desplazamiento

---

[17] Al confrontarse un tribunal a controversias para las que el legislador no ha previsto expresamente o provisto solución, es menester recurrir al mandato contenido en el Artículo 7 del Código Civil, que dispone, "cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos." Ortiz Andujar v. E.L.A., ante, a la pág. 822.

patrimonial que no encuentra una explicación razonable en el ordenamiento vigente." *Ibíd.*, a la pág. 822.[18] En el caso antes mencionado, resaltamos el hecho de que como todo principio general, esta doctrina ha ido desarrollándose y ganando concreción a través de la jurisprudencia, al punto de que hoy en día nadie le niega su franco crecimiento.

Para que proceda la aplicación de dicha doctrina es necesario que concurran ciertos requisitos básicos, a saber: i) existencia de un enriquecimiento; ii) un correlativo empobrecimiento; iii) una conexión entre dicho empobrecimiento y enriquecimiento; iv) falta de una causa que justifique el enriquecimiento; v) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. Ortiz Andujar, ante; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987).

Aun cuando en nuestra jurisdicción esta doctrina no está regulada por las disposiciones del Código Civil, la encontramos subsumida en la figura de los cuasicontratos. Ortiz Andujar, ante. Ciertamente, este Tribunal la ha incorporado plenamente con todos sus perfiles y alcance. Específicamente, en Plan de Bienestar Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697, 703 (1983), nos expresamos en torno a los parámetros que deben ser evaluados siempre que se presentan controversias en cuanto a la aplicación de dicha doctrina. En dicho caso discutimos varios principios

---

[18] Véase: J. Puig Brutau, Fundamentos del Derecho Civil, Barcelona, Ed. Bosch, 1983, T.II, Vol. 3, págs. 43-74.

que rigen el enriquecimiento sin causa y enumeramos las siguientes normas: i) la doctrina de enriquecimiento injusto es aplicable, dentro de determinadas situaciones, a los órganos administrativos; ii) la aplicación de la doctrina dependerá de las circunstancias específicas de cada caso ya que el Código Civil no agota las situaciones a las que la doctrina se extiende; iii) la doctrina de enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del País.

Más adelante, en Hatton v. Municipio de Ponce, 134 D.P.R. 1001, 1010 (1994), reiteramos esta norma y expresamos, al definir el alcance de esta doctrina, que la misma "no se aplicará cuando resulte contraria a una clara política pública, plasmada en un estatuto o en la Constitución." En Municipio de Ponce v. Gobernador, 138 D.P.R. 431 (1995), recalcamos este aspecto de la doctrina y dispusimos que al otorgar convenios que violenten de forma abierta principios de sana administración pública plasmados en nuestras leyes, no debe invocarse la doctrina del enriquecimiento injusto, pues su efecto sería violentar principios de suma importancia encarnados en la Constitución y leyes del País.

B

Con dicho trasfondo doctrinario y jurisprudencial en mente, examinamos la procedencia de la doctrina de enriquecimiento injusto al caso de autos.

En cuanto al primer requisito, el peticionario cuestiona el hecho de que los dos foros apelados hayan llegado a la conclusión de que el P.P.D. a nivel central se haya enriquecido a través de los servicios brindados por el señor Galo como encargado del comité municipal. En apoyo de dicho argumento, alega que el partido, a nivel central, no pudo haberse enriquecido de actos sobre los cuales nunca tuvo conocimiento ni mucho menos consintió.

A estos efectos, entendemos indispensable señalar que "el enriquecimiento puede ocurrir en dos (2) modalidades diferentes: el positivo o aumento en el patrimonio (*lucrum emergens*), o el negativo o disminución del patrimonio (*damnum cessans*). El negativo (*damnun cessans*) se apuntala en la premisa de que un *no gasto* equivale a un ingreso. En otras palabras, en la medida en que alguien sufre una pérdida que ordinariamente debería padecer otro, el primero le ahorra un gasto al segundo. Esta situación no tiene cabida en un sistema donde impera lo justo y debe ser remediada." Ortiz Andujar, ante, págs. 826-27. Énfasis suplido. El caso ante nos presenta claramente una situación fáctica en la que se refleja la modalidad de enriquecimiento injusto en su aspecto negativo.

No existe controversia en cuanto a que el señor Galo era el encargado del comité municipal del P.P.D. en Mayagüez y que su sueldo como tal fue sufragado por el Municipio. Siendo así, es evidente que el Municipio pagó

por el P.P.D. el gasto relativo a la remuneración del señor Galo en concepto de sueldos, bonos, licencias por vacaciones y por enfermedad. El Municipio se hizo cargo de satisfacer todo tipo de beneficios a un empleado que ejerció labores exclusivamente para dicha entidad u organismo político.

No nos persuade el argumento del P.P.D. a los efectos de que su organización no tenía conocimiento de que el señor Galo laboraba en el comité municipal de Mayagüez, pues probado el hecho de que el empleado rindió labores en dicho lugar, y que su sueldo fue sufragado por el Municipio de Mayagüez, es evidente que tal pago constituyó un "ahorro" al partido. Ello es así, pues de otro modo, el P.P.D. hubiera tenido que emplear a una persona a su propio costo para que se encargara del comité.

Debemos tener presente que bajo nuestra Ley Electoral, ante, un comité local o municipal de un partido político no tiene personalidad jurídica separada de la del partido debidamente inscrito. La cualidad de tener personalidad jurídica independiente le pertenece a los partidos políticos organizados bajo el mencionado estatuto, con capacidad jurídica para demandar y ser demandados. P.S.P. v. E.L.A., 107 D.P.R. 590 (1978). Los partidos políticos, a su vez, son el elemento básico de toda democracia. P.P.D. v. Gobernador, 139 D.P.R. 643 (1995). A través de nuestro sistema electoral se contempla la existencia continua de los partidos políticos y su participación en la discusión

de los asuntos de interés público. *Ibíd*. Ello es compatible con el papel que éstos desempeñan en nuestra sociedad, pues se caracterizan por ser las vías mediante las cuales se canalizan pacíficamente las distintas tendencias políticas y económicas de la sociedad. *Ibíd.*; P.S.P. v. E.L.A., ante. Como partidos políticos, realizan funciones cuasi-gubernamentales, tales como formular programas de administración y proponer candidatos a puestos políticos. *Ibíd.*

Por otra parte, y en lo que respecta al segundo requisito, es importante señalar que no hay la más mínima duda --ni controversia-- en torno al hecho de que el Municipio de Mayagüez sufragó todo tipo de remuneración hecha a favor del señor Galo. En consecuencia sufrió una disminución en sus arcas ascendente a cuarenta y cuatro mil doscientos ochenta dólares ($44,280.00). Dicha cantidad de dinero nunca estuvo en controversia. Esta fue la cantidad de fondos públicos que la Oficina del Contralor de Puerto Rico detalló en su Informe de Intervención como pagada por el Municipio al señor Galo Perocier sin que éste hubiese rendido labor alguna  en su beneficio y sí a favor del Comité Municipal del P.P.D.

En cuanto al tercer requisito que tiene que estar presente para que proceda una debida aplicación de la doctrina de enriquecimiento injusto --la correlación entre el empobrecimiento de una parte y el enriquecimiento de la otra-- debemos señalar que la relación entre

empobrecimiento y enriquecimiento <u>no exige que el efecto se produzca como resultado de una prestación directa del empobrecido al enriquecido</u>. Citando al tratadista Puig Brutau,[19] en <u>Ortiz Andujar</u>, ante, a la pág. 828, <u>señalamos que lo determinante es la existencia de un vínculo de conexión suficiente entre el patrimonio que ha sufrido la pérdida y el que ha experimentado el beneficio</u>. Ha de ser, pues, una misma circunstancia la que haya generado por un lado la pérdida y por otro la ganancia. <u>No</u> ha de entenderse que se requiere que el desplazamiento producido se dé directamente entre el perjudicado y el beneficiado, sino en que  un mismo hecho haya dado lugar a la pérdida y a la ganancia. *Ibíd.*

El peticionario alega que en el presente caso no procede la aplicación de la doctrina, pues el P.P.D. no se benefició, como institución, de la labor del señor Galo en el referido comité municipal; razón por la cual sostiene que no existe una relación entre el empobrecimiento del Municipio y el alegado enriquecimiento del partido. <u>No</u> le asiste la razón.

Conforme al Reglamento Oficial del P.P.D., surge claramente que entre las funciones propias de los comités municipales están: (i) ser responsables de la dirección política del Partido en el área de su jurisdicción; (ii) representar al Partido en todos los eventos electorales,

---

[19] Véase: J. Puig Brutau, <u>Fundamentos del Derecho Civil</u>, Barcelona, Ed. Bosch, 1983, T.II, Vol. 3, pág. 57.

actividades y asuntos de campaña; (iii) mantener un local apropiado para llevar a cabo sus funciones básicas; (iv) mantener activo el plan de finanzas; (v) organizar la movilización de sus partidarios a las diferentes actividades y a los eventos electorales; (vi) organizar actividades para promover los objetivos del Partido y (vii) llevar su mensaje de forma efectiva, a través de un programa de educación política, entre otras funciones.[20] Debe señalarse, además, que conforme con el Artículo 22 del antes mencionado Reglamento, cada comité municipal será el organismo rector del partido en su demarcación.[21]

Las anteriores funciones reglamentarias de los comités municipales del P.P.D. demuestran claramente que dichas entidades están subordinadas al P.P.D., como organismo central, y existen por necesidad del partido en el municipio donde estén localizadas. En otras palabras, son parte de una sola estructura del partido político, sea cual sea, creados con el propósito y objetivo de promover su ideal político.

Ciertamente, el P.P.D. no puede alegar ahora que no se benefició de la labor efectuada por el señor Galo Perocier como encargado del comité local municipal del partido en Mayagüez, pues era el principal beneficiario, aunque de manera indirecta, de todo lo que lograra llevar a cabo el

---

[20] Véase: Artículo 25 del Reglamento Oficial del Partido Popular Democrático para la fecha de los hechos.

comité municipal en cumplimiento de sus deberes y funciones reglamentarias.

En cuanto al cuarto requerimiento, esto es, el de falta de causa que justifique el enriquecimiento, tal como señaláramos en Ortiz Andujar, ante, pág. 829, "este término 'causa' no tiene aquí la acepción que se le da en materia contractual, sino que toma en el significado de acto jurídico que justifica la adquisición de una valor." Citas omitidas. Así, "el enriquecimiento no debe derivar su fuente de un acto jurídico que legitime su adquisición." Citas omitidas.

En el presente caso no existe razón o justificación alguna que diera base a que el comité municipal utilizara los servicios de un empleado municipal, ni mucho menos a que el referido municipio costeara tales servicios.

Finalmente, y en cuanto al requisito de la inexistencia de precepto legal que excluya la aplicación del enriquecimiento sin causa, el peticionario alega que la doctrina referente a los actos u omisiones ilícitas --la cual tiene su base en las disposiciones del Artículo 1802 del Código Civil-- impide que se configure un enriquecimiento injusto de parte del P.P.D. No puede el peticionario entremezclar conceptos relativos a una acción de enriquecimiento injusto con una de daños y perjuicios. Ortiz Andujar, ante. "La acción de enriquecimiento injusto

---

[21] Véase: Artículo 22 del Reglamento Oficial del Partido Popular Democrático para la fecha de los hechos.

es distinta a una de indemnización de daños y perjuicios por actos ilícitos." *Ibíd*, a la pág. 825.

En el antes citado caso señalamos, sobre la distinción entre ambas acciones, que:

> [L]a pretensión por daños se orienta siempre al agente provocador, y son indispensables los conceptos de culpa e imputabilidad para determinar el deber de indemnizar. La pretensión de enriquecimiento se encamina siempre contra el enriquecido sin causa, prescindiendo en absoluto de aquellas nociones de culpa e imputabilidad, y dejando en segundo término al agente provocador de la atribución patrimonial. La pretensión por daños necesita fijar la relación de causa a efecto entre el agente provocador y el daño. La pretensión por enriquecimiento fija dicha correlación entre el patrimonio del enriquecido y el del empobrecido. En la primera, la reparación se extiende al daño total, sin limitación de derecho, salvo algunas excepciones legales. En la segunda, la restitución tiene su objeto y su medida --salvo desviaciones concretas-- en la cuantía del enriquecimiento. El daño puede constituir, a la vez, *damnum emergens* (daño positivo) y *lucrum cessans* (lucro frustrado). El enriquecimiento puede producirse por un aumento del patrimonio (*lucrum emergens*) o por una no disminución del patrimonio (*damnum cessans*). La pretensión por daños nace siempre de un hecho ilícito. El daño se puede producir por acción o por omisión. El enriquecimiento --como es secundario el agente provocador--, sólo positivamente, por desplazamiento de valor de un patrimonio a otro". Citas omitidas. *Ibíd.*, págs. 825-26.

No cabe duda que el caso ante nos se presta para una aplicación clara de la doctrina del enriquecimiento injusto. No puede el peticionario alegar, con éxito, que cualquier reclamación relacionada a los actos del presidente del Comité Local debía haberse hecho al amparo del Artículo 1802 del Código Civil. El enriquecimiento se representó en la no disminución del patrimonio del P.P.D.,

al no tener que pagar sueldo alguno a un empleado que le rendía servicios. "En la acción de indemnización de daños y perjuicios por acto ilícito la indemnización se mide por el daño experimentado por la víctima, independientemente de que haya o no proporcionado beneficios al responsable, mientras que la restitución que procede en caso de enriquecimiento injusto no puede ser superior al aumento patrimonial experimentado por la otra parte". Ortiz Andújar, ante, a la pág. 826. Cita omitida y énfasis suplido. Es precisamente la cantidad de dinero equivalente al sueldo devengado por el señor Galo Perocier, con la cual el P.P.D. se enriqueció al no tener que desembolsarla. En conclusión, en el presente caso se dan todos lo requisitos para una debida aplicación de la doctrina de enriquecimiento injusto.

IV

Como último señalamiento de error, atendemos brevemente el argumento presentado por el peticionario en torno a la alegada prescripción de la causa de acción que dio lugar a la presente demanda y a la reclamación en cobro de fondos públicos.

Aduce el P.P.D. que la presente acción no versa sobre una reclamación por enriquecimiento injusto, sino sobre actos u omisiones culposos o negligentes al amparo del Artículo 1802 del Código Civil de Puerto Rico, ante, cuyo término de prescripción es de un (1) año contado a partir

del momento en que la persona agraviada adquiere conocimiento sobre los daños que le han sido causados. Artículo 1868 del Código Civil de Puerto Rico, ante.

Alega, además, que como la investigación llevada a cabo por la Oficina del Contralor culminó con la preparación de un Informe,[22] que para ese momento la parte demandante sabía --o debió haber sabido-- sobre los acontecimientos del caso y que, por lo tanto, la demanda enmendada de 26 de diciembre de 1995, fue radicada fuera del término prescriptivo de un (1) año.

Hemos resuelto que "la acción estrictamente para recobrar fondos públicos obtenidos ilícitamente no surge bajo el Artículo 1802 del Código Civil, *supra* ... Se trata más bien de una acción de naturaleza personal ... como la que procede para vindicar un enriquecimiento sin causa." E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992). Énfasis suplido. En dicho caso sostuvimos que en "ocasión de considerar una acción instada por el Estado para recobrar un alegado desembolso ilegal de fondos públicos ... resolvimos que para fines de prescripción la acción aludida era una personal de cobro de dinero ... siendo una acción personal sin término de prescripción ... debe aplicarse el término prescriptivo de quince (15) años que dispone el Art. 1864 del Código Civil, *supra*, para las acciones personales que no tengan señalado término especial de prescripción." *Ibíd.*, págs. 322-323; véase, además,

E.L.A. v. Asoc. Empleados Obras Pub. Mun., 126 D.P.R. 320 (1990).

Habiendo concluido que la causa de acción en el presente caso versa sobre una reclamación en cobro de fondos públicos ilegalmente utilizados y que la misma fue probada por la parte demandante, concluimos que el error señalado no se cometió, pues la demanda no estaba prescrita al momento de presentarse.

V

No podemos terminar sin hacer referencia a las disposiciones del Artículo VI, Sección 9, de la Constitución del Estado Libre Asociado de Puerto Rico, la cual dispone:

> Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley.

En Marrero v. Mun. de Morovis, 115 D.P.R. 643, 645 (1984), resolvimos que no pueden utilizarse los fondos o recursos públicos por determinado partido político para sus fines particulares. Adoptando los fundamentos del Tribunal de Primera Instancia, señalamos que, en la medida en que los fondos públicos se utilicen para propaganda político-partidista, se está afectando detrimentalmente el derecho de los demás electores.

---

[22] Fechado el 11 de octubre de 1988.

Sobre este mismo tema en P.P.D. v. Gobernador, ante, a la pág. 688, expresamos que bajo la restricción constitucional al uso de los fondos públicos, no se permite el uso político-partidista de dichos fondos ni que de otro modo un partido político o candidato obtenga una ventaja económica a expensas del erario público. "La verdadera esencia de un gobierno libre consiste en considerar los puestos públicos como un fideicomiso, encomendado para el bien del país y no para beneficio de determinado individuo o partido." *Ibíd.*, a la pág. 690; *Ex rel.* Pérez v. Manescau, 33 D.P.R. 739, 742 (1924).

En De Jesús v. Autoridad de Carreteras, res. el 30 de abril de 1999, 99 T.S.P.R. 66, citando a A.E.E. v. P.N.P.,[23] ante, señalamos que:

> El concepto del 'orden público', como acopio y reflejo de los principios generales del Derecho, ciertamente recoge el alto valor jurídico que varios jueces de este Foro expresaron de manera esclarecida en Autoridad de Energía Eléctrica y otros v. P.N.P., 128 D.P.R. 294 (1991), (voto concurrente del Juez Asociado señor Negrón García al cual se unieron los Jueces Asociados señores Rebollo López y Andréu García), cuando determinamos que no podían usarse fondos públicos para pagar salarios de personas contratadas por agencias gubernamentales si tales personas no desempeñaron labor alguna para esas agencias:
>
>> [E]l desembolso indebido o ilegal de fondos públicos —en sus formas múltiples, a veces burdas y otras sofisticadas son actos incompatibles con el sistema de gobierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad

---

[23] Véase: 128 D.P.R. 294, 299 (1991), Voto concurrente del Juez Asociado señor Negrón García al cual se unieron los Jueces Asociados señores Rebollo López y Andréu García.

humana y los dineros del pueblo, como único soberano. No importa las modalidades que adopten, ni la jerarquía del funcionario envuelto, las mismas son intolerables. En última instancia, quien verdaderamente se perjudica, no sólo en lo económico sino en lo moral, es la ciudadanía en general ... Es pues, obligación de los tribunales reivindicar esos valores fundamentales.' Énfasis suplido.

Hemos reiterado, además, que el manejo prudente de fondos públicos está saturado de intereses de orden público, sin que importe la cuantía involucrada. Merece recordar que "es importante, lo sería, por pequeña que fuera, cualquier suma, cuando se trata de los bienes, del dinero de una comunidad municipal. Los intereses de esas comunidades son los del pueblo, los de los contribuyentes; y su empleo o inversión requieren un gran cuidado que se traduce en las exigencias legales". Énfasis suplido. Hatton v. Municipio de Ponce, ante, pág. 1012; Vázquez v. Municipio, 40 D.P.R. 509, 512 (1930). No hay duda, en consecuencia, que el E.L.A. tenía plena capacidad para radicar la demanda en el presente caso en reclamo o cobro de los fondos públicos ilegalmente desembolsados por el Municipio de Mayagüez.

No podemos validar la erogación de fondos públicos para satisfacer el sueldo, bonos, licencias por vacaciones y enfermedad a un empleado municipal cuando éste no realizó labor alguna destinada a su empleo en el Municipio y sí en beneficio privado de un comité político. Esto constituye un claro ejemplo del uso indebido de fondos públicos que

prohíbe nuestra Constitución. Como máximos intérpretes de la misma, es nuestro deber y responsabilidad velar porque dichos fondos respondan directamente a las necesidades de la ciudadanía y no a los fines de un partido o candidato político alguno. No se está promoviendo de esa manera ninguna política pública plasmada en los estatutos ni en la Constitución.

En esencia, nos vemos en la obligación de concluir que la erogación de fondos públicos en el presente caso, para satisfacer el sueldo, beneficios, etc., al empleado municipal Galo Perocier se hizo en total contravención al postulado constitucional que regula toda disposición de fondos públicos para fines públicos y no privados. Demás está decir que de dicha erogación de fondos públicos se benefició el P.P.D., pues fue un gasto realizado por el Municipio de Mayagüez que debió haber sido hecho por dicho partido. Constituye una clara política pública, que debe ser fomentada por todo funcionario del gobierno, tanto a nivel estatal como municipal, la de promover y velar por la más sana y recta administración de los fondos del pueblo.

Así pues, reiteramos la capacidad del Estado, a base del resultado de investigaciones realizadas por la Oficina del Contralor al amparo de su facultad constitucional, para entablar demandas como la del caso de autos.[24] Por

---

[24] La Ley Núm. 17 de 8 de mayo de 1973, según enmendada por la Ley Núm. 51 de 7 de junio de 1977, le concede facultad a la Oficina del Contralor, adscrita al Departamento de Justicia, de instar acciones civiles ante

**(Continúa . . .)**

consiguiente, en cumplimiento de su obligación constitucional de velar por la más sana y recta administración de los fondos públicos, <u>tanto estatales</u> como <u>municipales</u>, el E.L.A, al así actuar, está salvaguardando los intereses de todos los ciudadanos de Puerto Rico, en específico, los del Municipio de Mayagüez, en tanto en cuanto, dichos fondos están destinados para beneficio general de los mismos.

No obstante la capacidad reconocida al Estado de reclamar fondos públicos estatales y municipales, debemos recalcar que, aunque éste haya entablado la demanda en el caso de autos, dichos fondos deben eventualmente revertir a su fuente de origen, esto es, a las arcas del Municipio de Mayagüez. Llegamos a tal conclusión por la sencilla razón de que, ante el conflicto de intereses existente en el presente caso, en donde el propio Alcalde actuó en contra

---

los tribunales que surjan como resultado de intervenciones del Contralor en relación con los ingresos, cuentas, y desembolsos de los municipios. Las investigaciones del Contralor están revestidas del más alto interés público y van dirigidas a fomentar la más sana administración de los fondos públicos.

De acuerdo a la ley que crea la Oficina del Contralor, Ley Núm. 9 de 24 de julio de 1952, dicha oficina tiene la facultad de, a través sus auditores, empleados de intervenir, supervisar, y de ser necesario, por descubrirse irregularidades en lo relativo al uso de fondos públicos, referir al Secretario de Justicia para que se tomen las acciones legales pertinentes.

El Contralor fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si se han hecho de acuerdo a la ley. Artículo III, Sección 22 de la Constitución.

de los intereses de los ciudadanos de su Municipio, utilizando los referidos fondos para propósitos no autorizados por ley, resultaba obvio que dicho funcionario no iba a recurrir al foro judicial con el fin de reclamarlos en representación del referido Municipio. Dicho de otra manera, aun cuando el Municipio no haya recurrido a los tribunales con el propósito de recobrar sus fondos, esto debido a que fue precisamente el Alcalde quien incurrió en los actos que dieron margen a la presente situación, reiteramos que le correspondía al Estado velar por los intereses que dicho funcionario no salvaguardó, esto debido a la naturaleza pública de los fondos en cuestión, el Municipio de Mayagüez tiene derecho a los mismos.[25]

VI

En vista de que concluimos que el desembolso de fondos públicos en el presente caso fue realizado en contravención al Artículo VI, Sección 9 de nuestra Constitución, confirmamos el dictamen del entonces Tribunal de Circuito

---

[25] Resolver, de otra manera, implicaría que en todo caso en que un alcalde participe en un esquema indebido, en que ocurre una erogación ilegal de fondos públicos municipales, y éste se niega a instar la acción correspondiente, dichos fondos no podrían ser recobrados. Es por ello que el E.L.A., necesariamente, tiene capacidad (standing) para instar en el presente caso la acción de recobro de fondos públicos ilegalmente desembolsados, contra la parte que ilegalmente se benefició de dicho desembolso, en representación de los ciudadanos de dicha municipalidad; ello en cumplimiento del mandato constitucional contenido en la Sección 9 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico.

de Apelaciones, en cuanto el mismo adjudicó responsabilidad contra el Partido Popular Democrático[26] y le ordenó a dicho partido político la debida restitución de los referidos fondos al erario público. Ahora bien, tomando en consideración que el Municipio de Mayagüez fue el organismo afectado y empobrecido por la erogación ilegal de fondos, entendemos procedente ordenar al Estado que, una vez reciba dichos fondos, a través de su agente fiscal y financiero, proceda a realizar la asignación de la partida correspondiente a favor del Municipio, siendo ésta la entidad con verdadero derecho a recibirlos.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado


---

[26] Con la confirmación de tal determinación de responsabilidad, <u>no</u> estamos, sin embargo, abriendo las puertas para que los partidos políticos, como organismos centrales, tengan que responder, como regla general, por todo acto fraudulento llevado a cabo por sus funcionarios. Es precisamente, <u>a la luz de los hechos y circunstancias específicas de este caso</u>, en que el P.P.D. se vio beneficiado y enriquecido por las actuaciones de un funcionario suyo, que ordenamos el reembolso de los fondos públicos utilizados en contravención al Artículo VI, Sección 9, de nuestra Constitución.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Demandante-recurrido

       v.                CC-2000-211     CERTIORARI

Benjamín Cole Vázquez; Comité
Local del Partido Popular
Democrático, y otros

    Demandados-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 13 de abril de 2005

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, se dicta Sentencia condenando al Partido Popular Democrático a pagar la cantidad de $44,280.00 a la parte demandante. Se ordena al Estado que una vez reciba dichos fondos, a través de su agente fiscal y financiero, proceda a realizar la asignación de la referida cantidad a favor del Municipio de Mayaguez.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo