ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JESSICA MÉNDEZ CORDERO, ALEX ANTONIO VILLEGAS GONZÁLEZ POR SÍ Y EN REPRESENTACIÓN DE LA MENOR ADRIANA PAOLA VILLEGAS MÉNDEZ<br><br>Parte Apelante<br><br>v.<br><br>ESCUELA ELEMENTAL Y SUPERIOR (EAVIA) ANTOLINA VÉLEZ INTER AGUADILLA, UNIVERSIDAD INTERAMERICANA DE PUERTO RICO, UNIVERSAL INSURANCE COMPANY; MUNICIPIO AUTÓNOMO DE AGUADILLA, COMPAÑÍA OPERADORA O DE ENTRETENIMIENTO DESCONOCIDA, ASEGURADORA ABC, ASEGURADORA DEF, ASEGURADORA GHI, ASEGURADORA JKL<br><br>Parte Apelada | KLAN202300992 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.:<br>AG2023CV00396<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de noviembre de 2023.

Compareció ante este Tribunal la parte apelante, Jessica Méndez Cordero y Alex Antonio Villegas González, por sí y en representación de la menor Adriana Paola Villegas Méndez (en adelante, "Méndez-Villegas" o los "Apelantes"), mediante recurso de apelación presentado el 6 de noviembre de 2023. Nos solicitaron la revocación de una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en

adelante, el "TPI"), el 22 de agosto de 2023, notificada y archivada el 24 de mismo mes y año. Dicho dictamen fue objeto de una solicitud de reconsideración interpuesta por los Apelantes, declarada "No Ha Lugar" mediante *Resolución y Orden* de 3 de octubre de 2023, notificada y archivada en autos el mismo día.

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia Parcial* apelada.

**I.**

El caso de autos tuvo su génesis el 18 de octubre de 2022, cuando la menor Adriana Paola Villegas Méndez sufrió una caída en un inflable de obstáculos mientras participaba del día de juegos. La asistencia a esta actividad era de carácter compulsorio, como parte del curso de educación física y salud de la Escuela Elemental y Superior Antolina Vélez de la Universidad Interamericana de Puerto Rico (en adelante, la "UIPR"). La menor presuntamente sufrió una rotura de la patela de la pierna izquierda, rodilla, tibia, menisco y ligamentos, por lo que tuvo que ser atendida de emergencia e intervenida quirúrgicamente en dos (2) ocasiones. Arguyeron que la menor permaneció encamada por espacio de tres (3) semanas y tuvo que recibir terapias físicas y psicológicas para su rehabilitación.

En vista de los hechos antes mencionados, el 18 de marzo de 2023, Méndez-Villegas presentó una "**Demanda**" de daños y perjuicios en contra de la UIPR y su aseguradora Universal Insurance Company (en adelante, "Universal" o la "Apelada"), entre otros codemandados. Luego de contestada la "**Demanda**", Universal presentó "**Moción de Sentencia Sumaria Parcial**" el 19 de mayo de 2023.

En la misma expuso que la póliza emitida a favor de la UIPR contiene un endoso de exclusión de cubierta a personas que resulten lesionadas mientras se encuentran participando o practicando un deporte. El endoso CG-21-01-11-85 intitulado "*Exclusion Athletic or Sport Participants*" (en adelante, "cláusula de exclusión"), lee como sigue:

> "**EXCLUSION-ATHLETIC OR SPORT PARTICIPANTS**
> This endorsement insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

[…]

With respect to any operations shown in the Schedule, this insurance does not apply to "body injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor."

Por lo tanto, arguyó que el accidente de la menor no estaba cubierto por la póliza por haber ocurrido mientras estaba practicando una actividad deportiva. En consecuencia, solicitó la desestimación, con perjuicio, de la "**Demanda**". El 8 de julio de 2023, los Apelantes presentaron su oposición mediante la cual, en síntesis, alegaron que "bajo cualquier criterio hermenéutico, una actividad en un inflable como parte de un día de juegos, no es una actividad deportiva excluida de la cubierta de la póliza en controversia".[1]

Analizadas las mociones presentadas por las partes, el 22 de agosto de 2023, notificada el 24 de mismo mes y año, el tribunal de instancia emitió *Sentencia Parcial* en la cual declaró "Ha Lugar" la solicitud de sentencia sumaria. Mediante el referido dictamen, el foro *a quo* determinó que la reclamación efectuada no está cubierta por la póliza de seguro de Universal. Así pues, desestimó la "**Demanda**", con perjuicio, en cuanto a Universal. Inconforme, Méndez-Villegas presentó "**Moción de Reconsideración**" el 7 de septiembre de 2023. Allí expusieron que existía un hecho en controversia, por lo que antes de resolver la solicitud de sentencia sumaria era necesario pasar prueba para determinar si, en efecto, la actividad del día de juegos era o no una atlética o deportiva que estuviese excluida por la póliza expedida por Universal. Por otro lado, indicaron que, ante la falta de claridad sobre el tipo de actividad celebrada, al momento de interpretar el texto de la cláusula de exclusión, la misma debe ser interpretada en contra del asegurador.

El foro apelado emitió una *Orden* el 8 de septiembre de 2023, notificada en igual fecha, en la que concedió a la Apelada un término de veinte (20) días para fijar su posición. El 28 de septiembre de 2023, Universal presentó su "**Oposición a Reconsideración**". En la misma

---

[1] *Véase*, "**Moción en Oposición a Sentencia Sumaria Parcial**", Ap. pág. 38.

reiteró su postura en cuanto a que las reclamaciones de la "**Demanda**" no están cubiertas debido a la cláusula de exclusión. Asimismo, indicó que los Apelantes no le notificaron la presentación de la reconsideración, en contravención con la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V. Sostuvo que, aunque entiende que la falta de notificación pudo haber sido producto de algún error técnico del Sistema Unificado de Manejo y Administración de Casos (SUMAC), ello no significaba que no deba estar pendiente al fiel cumplimiento de las notificaciones, puesto que de un mero examen del volante de notificación que genera SUMAC, hubiese notado el error y haberlo corregido.

Sometidas las mociones, el TPI emitió *Resolución* el 3 de octubre de 2023, notificada en igual fecha, mediante la cual declaró "No Ha Lugar" la "**Moción de Reconsideración**". En desacuerdo con dicho proceder, Méndez-Villegas presentó el recurso de apelación ante nuestra consideración, en el cual alegaron la comisión de los siguientes errores:

1. **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE CONFORME A LA CLÁUSULA DE EXCLUSIÓN DEL ENDOSO CG-21-01-1185 "*EXCLUSION ATHLETIC OR SPORTS PARTICIPANTS*", UNIVERSAL INSURANCE COMPANY NO RESPONDE POR LOS DAÑOS Y PERJUICIOS RECLAMADOS EN LA DEMANDA.**

2. **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONSIDERAR COMO FUNDAMENTO DE SU DICTAMEN, EL ALEGADO INCUMPLIMIENTO CON LA NOTIFICACIÓN DE LA MOCI[Ó]N DE RECONSIDERACIÓN.**

El 17 de noviembre de 2023, Universal presentó "**Alegato de la Parte Apelada Universal Insurance Company**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria.

A la luz de sus disposiciones, si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3. En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 167 (2011); Universal Ins. *et als.* v. ELA *et al.*, 2023 TSPR 24, 211 DPR ___ (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal.

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Mejías *et al.* v. Carrasquillo *et al.*, 185 DPR 288*,* 299 (2012); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911-912 (1994). Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. Serrano Picón v. Multinational Life Ins., 2023 TSPR 118, 212 DPR ___ (2023); SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Roldan Flores v. M. Cuebas *et al.*, 199 DPR 664, 676 (2018). Por su parte, la parte promovida

por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677; Ramos Pérez v. Univisión, 178 DPR 200, 214-215 (2010).

Según las directrices pautadas por nuestro más Alto Foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este Foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Birriel Colón v. Supermercados Los Colobos, 2023 TSPR 120, 213 DPR ___ (2023);

Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020). La revisión que realice el foro apelativo deberá ser *de novo*, examinando "el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria y realizando todas las inferencias permisibles a su favor". Birriel Colón v. Supermercados Los Colobos, *supra*. (Énfasis suplido). No obstante, dicha revisión estará limitada solamente a adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Vera v. Dr. Bravo**,** *supra*, págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**B.**

En nuestra jurisdicción, el negocio de seguros está investido de un alto interés público debido a la importancia, complejidad y efecto en la economía y la sociedad. Consejo Titulares v. MAPFRE, 208 DPR 761, 773 (2022). Así como debido "al papel que juega en la protección de los riesgos

que amenazan la vida o el patrimonio de los ciudadanos". R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017) citando a Natal Cruz v. Santiago Negrón *et al.*, 188 DPR 564, 575 (2013). El contrato de seguro juega un papel esencial en el ámbito comercial, toda vez que permite a las personas y a los negocios proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 897 (2012). Es precisamente por esta razón que el negocio de seguros ha sido regulado ampliamente por el Estado, a través de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico", 26 LPRA sec. 101 *et seq.* (en adelante, el "Código de Seguros" o la "Ley Núm. 77-1957").

El "contrato de seguro" se define como aquel por el que una persona se obliga a indemnizar a otra si se produce un suceso incierto previsto. Su propósito es indemnizar y proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102; R.J. Reynolds v. Vega Otero, *supra*, pág. 707; Integrand Assurance v. CODECO *et al.*, 185 DPR 146, 162 (2012). Por su parte, la "póliza" configura el documento escrito donde se plasman los términos que rigen el contrato de seguro. Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1).

Es norma conocida que, en materia de seguros, la fuente principal de interpretación es el Código de Seguros, *supra*. Serrano Picón v. Multinational Life Ins., *supra*. Así pues, la Ley Núm. 77-1957, *supra*, dispone que "todo contrato de seguro debe interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta". Echandi Otero v. Stewart Title, 174 DPR 355, 370 (2008); Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Por tanto, nuestro más alto foro estatal ha reconocido que, como el contrato de seguros es uno de adhesión, al momento de interpretar los términos de la póliza éstos deben ser "generalmente entendidos en su más corriente y usual

significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". Morales Garay v. Roldan Coss, 110 DPR 701, 706 (1981). Es decir, al examinar los términos consignados en el contrato, los tribunales están llamados "a considerar los vocablos utilizados a base de su aceptación cotidiana como lo haría un ciudadano de inteligencia promedio interesado en obtener una póliza de seguro". Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898.

De igual forma, se ha establecido que aquellas cláusulas oscuras se interpretarán a favor del asegurado. Integrand Assurance v. CODECO *et al.*, 185 DPR 146, 162 (2012). No obstante, dicho principio de hermenéutica no aplicará cuando las cláusulas en cuestión resulten claras y libres de ambigüedad, haciéndose valer en tales casos la voluntad de las partes. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898.

Por otra parte, y debido a que nuestro ordenamiento jurídico permite que en un contrato de seguro las partes acuerden excluir ciertos eventos u ocurrencias, para poder determinar qué riesgos están cubiertos en la póliza de seguros, hay que considerar si en el contrato se incluyó una cláusula de exclusión. Este tipo de cláusulas "limitan la cubierta provista por un seguro al exceptuar determinados eventos, riesgos o peligros". Viruet *et al.* v. SLG Casiano-Reyes, 194 DPR 271, 279 (2015). Nuestro Tribunal Supremo reconoce que "[c]omo norma general, éstas cláusulas son desfavorecidas, por lo que han de interpretarse restrictivamente en contra del asegurador", a menos que la cláusula haya sido confeccionada mediante términos claros. Serrano Picón v. Multinational Life Ins., *supra*. Ello es así para poder cumplir con el propósito de todo seguro de ofrecer la mayor protección al asegurado. Echandi Otero v. Stewart Title, 174 DPR 355, 370-371 (2008).

**III.**

En el caso de autos, los Apelantes acuden ante nos luego de que el foro primario declarara "Ha Lugar" una "**Moción de Sentencia Sumaria Parcial**" presentada por Universal y denegara una moción de reconsideración interpuesta por éstos.

En primer término, se hace indispensable establecer que en el presente caso no existe una controversia sobre hechos medulares. Al examinar la solicitud de sentencia sumaria y la oposición presentada por los Apelantes, notamos que **ambas partes esbozaron los mismos hechos esenciales y pertinentes en sus respectivas comparecencias**. Es, pues, evidente que la controversia que se sometió ante la consideración del TPI y que hoy se presenta en el recurso que nos ocupa, se limita a plantear un asunto de estricto derecho en cuanto a la interpretación que se le debe dar a la cláusula de exclusión en controversia, a base de los hechos incontrovertidos. No estando en controversia ningún hecho específico, procede analizar los planteamientos de las partes, a base del derecho aplicable.

En el recurso de apelación, arguyen que erró el foro *a quo* al resolver que, conforme a la cláusula de exclusión incluida en la póliza, la Apelada no responde por los daños y perjuicios reclamados en la "**Demanda**". Asimismo, plantean que erró al considerar como fundamento de su dictamen, el alegado incumplimiento con la notificación de la moción de reconsideración. Veamos.

Respecto al primer señalamiento de error, Méndez-Villegas sostiene que, aunque la actividad donde ocurrieron los hechos alegados tiene facilidades deportivas, las lesiones sufridas por la menor surgieron como resultado del uso de un inflable. Entiéndase que, no se trató de un accidente ocurrido en la práctica de un deporte o actividad atlética formal. Indican que, por definición, una actividad deportiva requiere entrenamiento y sujeción a normas definidas para su ejercicio. Añadieron que al carecer la referida cláusula de una definición de lo que es deporte o una actividad atlética y, por ende, haber una falta de claridad sobre el tipo de actividad celebrada, el foro primario, conforme los principios de hermenéutica, debió interpretar la cláusula de la manera más favorable al beneficiario de la póliza, la UIPR. Estamos de acuerdo con dicho análisis.

Es harto conocido en nuestro ordenamiento jurídico que, al momento de interpretar una cláusula, los tribunales estamos llamados a

considerar las palabras o términos utilizados a base de su aceptación cotidiana. Maderas Tratadas v. Sun Alliance *et al.*, *supra*. Además, en caso de que exista una cláusula de exclusión, estas deberán interpretarse restrictivamente, a favor del asegurado, pues se busca cumplir con el propósito de ofrecer la mayor protección al asegurado. Echandi Otero v. Stewart Title, *supra*. Ahora bien, en los casos en que una póliza no defina los términos utilizados en las cláusulas de exclusión resulta necesario definir los mismos, conforme al uso común que le concede una persona ordinaria.

La cláusula de exclusión ante nuestra consideración dispone lo siguiente:

> …this insurance does not apply to "body injury" to any person **while practicing for or participating in any sports or athletic contest or exhibition** that you sponsor. (Énfasis suplido).

Es decir, esta cláusula excluye de cubierta a aquellas situaciones en que una persona sufra lesiones corporales **mientras practica o participa en cualquier deporte, competencia o exhibición atlética que el asegurado, en este caso la UIPR, patrocine**. No empece, esta cláusula no provee una definición de estas palabras, por lo que deja en manos del tribunal su interpretación. En vista de ello, debemos determinar si la actividad en un inflable constituye practicar o participar en un deporte, competencia o exhibición atlética.

Un panel hermano de este Tribunal atendió una controversia sobre una cláusula de exclusión análoga a la de autos en el recurso núm. KLAN201000812. En dicho caso, el apelante acudió a cierto club para renovar su licencia de portar armas para lo cual era necesario que tomara un curso de uso y manejo de armas de fuego. Durante éste, el apelante sufrió unos daños que reclamó a la aseguradora del club. No obstante, ésta alegó que la póliza contenía una cláusula de exclusión que no cubría aquellos daños mientras practicaba o participa en cualquier deporte, competencia o exhibición atlética. Al momento de interpretar la cláusula de exclusión el foro apelativo expuso que:

Para que la exclusión aplique, y no haya cubierta de la póliza, es necesario que la persona lesionada estuviera haciendo actos similares a los requeridos para una competencia, concurso o exhibición deportiva, de forma tal, que ésta pudiera desarrollar las capacidades y destrezas particulares y esenciales para tener éxito en el evento atlético o deportivo.[2]

En esa línea, definieron actividad deportiva como "un juego o ejercicio en que se hace prueba de agilidad, destreza o fuerza y que aprovecha al cuerpo y al espíritu. Además, supone entrenamiento y sujeción a unas normas".[3] Ante tales hechos, el panel hermano concluyó que la práctica del tiro al blanco, por sí sola, no constituía que el apelante estuviese practicando el deporte de tiro al blanco, ni que estuviera en un concurso o exhibición de dicho deporte en el cual aplicaría la exclusión de la póliza. Asimismo, concluyó que dicha práctica era incidental al curso de uso y manejo de armas de fuego necesario para renovar su licencia de portar armas, conforme requiere la ley de armas y el reglamento.

Debido a que la póliza en el caso de autos no define "actividad deportiva", acogemos la definición otorgada por el panel hermano al caso de marras. Establecido lo anterior, no podemos concluir que una actividad en un inflable constituye una actividad deportiva y, por consiguiente, una actividad que no esté cubierta por la póliza. Ante las circunstancias específicas del caso e interpretando el término según su significado común, la participación de la menor en un inflable no era parte de un juego o ejercicio en que se hiciera prueba de agilidad, destreza o fuerza, ni supuso un entrenamiento y sujeción a norma alguna. Surge de la "**Demanda**" que la menor acudió al día de juegos como parte de su curso de educación física y salud. Por tanto, al no realizar actos similares a los requeridos para una competencia, concurso o exhibición deportiva, de forma tal, que ésta pudiera desarrollar las capacidades y destrezas particulares y esenciales para tener éxito en el evento atlético o deportivo, no aplica la cláusula de exclusión. Recordemos pues, que este tipo de cláusulas son

---

[2] *Véase*, Russ, Lee y Segalla Thomas, <u>Couch on Insurance 3D</u>, West Group, 1995, sec. 129:33; 7A Appleman, <u>Insurance Law & Practice</u>, sec. 4514.

[3] *Véase*, caso núm. KLAN201000812, *Sentencia* emitida el 29 de octubre de 2010, citando a Diccionario de la Real Academia Española, Vigésima Segunda Edición, Diccionario General Ilustrado, Lengua Española, Vox; <u>Reese v. Alea London Ltd.</u>, 332 Fed. Appx 135.

desfavorecidas y deben interpretarse de manera restrictiva, en contra del asegurador.

Incluso, los Apelantes exponen que una de las causas de la ocurrencia del accidente se debió a que no se contaba con el personal de seguridad diestro para supervisar la utilización adecuada de las actividades de entretenimiento. Por tanto, resulta lógico concluir que no existía estructura de competencia, ni normas definidas para su ejercicio. Así pues, somos de la opinión de que no es posible que se considere dicha actividad como una deportiva, excluida por la póliza.

Por lo antes establecido, concluimos que la cláusula de exclusión no aplica a los hechos en controversia, por lo que la reclamación efectuada está cubierta por la póliza de seguro expedida por Universal. En el caso ante nuestra consideración, no surge que la menor estuviese practicando o participando de deporte alguno, sino que se encontraba en un inflable como parte del día de juegos de su escuela. En vista de lo anterior, resulta errada la determinación del foro apelado al declarar "Ha Lugar" la moción de sentencia sumaria presentada por Universal, por considerar que era aplicable la cláusula de exclusión y desestimar la causa de acción en su contra.

Mediante el segundo señalamiento de error, los Apelantes arguyen que erró el foro de instancia al considerar como fundamento de su dictamen, el alegado incumplimiento con la notificación de la moción de reconsideración.

El 7 de septiembre de 2023, Méndez-Villegas presentó una "**Moción de Reconsideración**" en la plataforma de SUMAC. Al próximo día, el foro *a quo* emitió una *Orden* mediante la cual le concedió a Universal un término de veinte (20) días para que se expresara en torno a la misma. No empece lo anterior, surge de SUMAC que la representación legal de Universal fue inactivada el 24 de agosto de 2023, fecha en que se notificó la *Sentencia Parcial*. Entiéndase que fue inactivado antes de que la *Sentencia Parcial* adviniera final y firme. Por lo tanto, no le fue notificada la moción solicitando

reconsideración, ni el término concedido por el tribunal de instancia. Dicho error en el sistema fue reconocido por la Apelada.

Ahora bien, surge del expediente ante nuestra consideración que el 15 de septiembre de 2023 se celebró una Conferencia Inicial a la cual compareció el representante legal de Universal y expuso que desconocía sobre la moción y el término de veinte (20) días otorgado. Así pues, solicitó, y el tribunal le concedió, que dicho término comenzara a contar a partir de dicha vista. Oportunamente, Universal presentó su oposición el 28 de septiembre de 2023 mediante la cual expuso sus argumentos en contra de la reconsideración.

Ciertamente, aunque la Regla 47 de Procedimiento Civil, *supra*, requiere que la notificación de la moción sea dentro del término de quince (15) días concedido para presentarla, la misma también establece que dicho término será de cumplimiento estricto. Es decir, que el mismo se podrá extender o prorrogar al demostrar justa causa. Indistintamente de la situación provocada por SUMAC al eliminar a la representación de Universal antes de advenir final y firme la Sentencia *Parcial*, el mismo fue subsanado durante la celebración de la Conferencia Inicial, cuando el representante legal de Universal advino en conocimiento de la moción presentada. Nótese que la Apelada tuvo la oportunidad de presentar su oposición dentro del término concedido por el tribunal de instancia, luego de celebrada la vista.

Presentada la "**Moción de Reconsideración**" a tiempo y sin habérsele quebrantado el derecho a un debido proceso de ley de Universal cuando se le permitió presentar su oposición dentro del término concedido por el TPI, reiteramos que erró el foro apelado al declarar "No Ha Lugar" la moción de reconsideración.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *revoca* la *Sentencia Parcial* apelada, toda vez que entendemos que la cláusula de exclusión de la póliza expedida por Universal no es de aplicación a los hechos del caso. En vista

de ello, procede devolver el caso al TPI para la continuación de los procedimientos consistentes con la presente *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones