ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| VÍCTOR RAFAEL RÍOS RÍOS<br><br>Parte Apelada<br><br><br>v.<br><br><br><br>**ONE ALLIANCE INSURANCE CORPORATION**, BERKLEY INSURANCE COMPANY, BERKLEY INTERNATIONAL PUERTO RICO, LLC.<br><br>Parte Apelante | TA2025AP00360 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV00656<br><br>Sala: 508<br><br>Sobre:<br>Despido injustificado y Discrimen por edad |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 6 de octubre de 2025.

Compareció ante este Tribunal la parte apelante, One Alliance Insurance Company (en adelante, "One Alliance" o "Apelante"), mediante recurso de apelación presentado el 22 de septiembre de 2025. Nos solicitó la revocación de la *Sentencia Parcial* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI") el 18 de septiembre de 2025. A través del referido dictamen, el TPI declaró "Ha Lugar" la "**Moción Solicitando Sentencia Sumaria Parcial**" presentada por Berkley Insurance Company y Berkley International Puerto Rico, LLC. (en adelante, y en conjunto "Berkley" o "Apelados").

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia Parcial* apelada.

## I.

Los hechos del presente caso se originaron con la presentación de una "**Querella**" por parte del Sr. Víctor Rafael Ríos Ríos (en adelante, el "señor Ríos") en contra de One Alliance y otros codemandados de nombres

desconocidos, fundamentada en una alegada cancelación sin justa causa de contrato de empleo a término, actuaciones constitutivas de discrimen en el empleo y violaciones a la Ley Núm. 379 del 15 de mayo de 1948, conocida como la "Ley para Establecer la Jornada de Trabajo", 29 LPRA sec. 282 *et seq (*en adelante*,* la "Ley Núm. 379-1948"). Luego de múltiples incidencias procesales, el 12 de julio de 2022, el señor Ríos presentó "**Moción Solicitando Emplazamientos a Nombre de Berkley Insurance Company; Berkley International Puerto Rico, LLC**". Mediante la misma, expuso que durante el descubrimiento de prueba iniciado en el caso pudo identificar que la compañía aseguradora de One Alliance era Berkley, por lo que solicitó se expidieran los correspondientes emplazamientos y se permitiera la presentación de una enmienda a la "**Querella**".

Así las cosas, el 8 de agosto de 2022, el foro primario ordenó la expedición de los emplazamientos y convirtió el pleito a uno ordinario, entre otras cosas. El 17 de agosto de 2022, Berkley presentó "**Contestación a la Querella Enmendada**". Alegó afirmativamente que emitió la póliza de seguros denominada *Management Liability Insurance* número 23-00009436/00 a nombre de One Alliance, con período de vigencia de 23 de agosto de 2021 a 1 de febrero de 2022. Sostuvo que el límite de responsabilidad de la póliza era hasta $2,000,000.00 y sujeto a todos los términos, limitaciones, condiciones y exclusiones allí establecidas. Asimismo, especificó que las cubiertas tenían un retenido de $25,000.00. No obstante, planteó que la póliza no cubría todas las causas de acción contenidas en la "**Querella Enmendada**".

Específicamente, expuso que la Exclusión A de la póliza era de aplicación, razón por lo cual Berkley denegaría cubierta por cualquier y toda alegación y reclamo del señor Ríos relacionado a daños físicos. Asimismo, expuso que la Exclusión C también es de aplicación, por lo que denegaría cubierta por cualquier reclamo relativo a incumplimiento del contrato de empleo del señor Ríos. De igual manera, planteó que la Exclusión I de la Póliza también aplicaba y, por tanto, cualquier alegación relacionada con la Ley Núm. 379-1948, *supra*, no estaba cubierta.

Tras varios trámites impertinentes a la controversia de autos, el 10 de mayo de 2022, el foro de instancia mediante *Sentencia Parcial* desestimó la reclamación al amparo de la Ley Núm. 379-1948, *supra.* Más adelante, el 2 de enero de 2024, Berkley presentó una "**Moción Solicitando Sentencia Sumaria Parcial**" en la que sostuvo que procedía la desestimación de las restantes causas de acción presentadas en su contra, toda vez que no existía cubierta para reclamaciones de incumplimiento de contrato, pago del paquete de compensación y daños físicos, conforme a los términos, condiciones, limitaciones y exclusiones de la póliza.

En detalle alegó que, al analizar las definiciones de los términos "loss" y "damages" incluidos en la póliza, resultaba evidente que la reclamación no estaba comprendida dentro de dichos parámetros. Sostuvo que, aun si el Tribunal concluyera que One Alliance incumplió el contrato de empleo, esa pérdida estaría expresamente exceptuada por la Exclusión C. Precisó, además, que la referida póliza no aplica debido a que quedan fuera de la definición de "damages" las reclamaciones relacionadas con impuestos, multas, seguros, beneficios de salud o pensión, comisiones, bonos, pagos de separación, salarios futuros o beneficios vinculados a la continuidad de empleo. Finalmente, resaltó que, conforme a la Exclusión A, Berkley tampoco tiene el deber contractual de cubrir reclamaciones por alegados daños físicos. En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" su petición.

El 5 de enero de 2024, One Alliance presentó su "**Oposición a la Moción Solicitando Sentencia Sumaria Parcial instada por Berkley Insurance Company y Berkley International Puerto Rico LLC**". Mediante dicho escrito, argumentó que no procedía la desestimación de las causas de acción presentadas en contra de Berkley, pues persistían controversias sobre hechos esenciales del caso. En particular, señaló que los puntos en litigio eran: (1) si en la "**Querella Enmendada**" presentada se invocó una causa de acción por incumplimiento contractual; y (2) si la reclamación del señor Ríos, relacionada con la terminación de su contrato

de empleo y despido, estaba cubierta por la póliza emitida por Berkley. Asimismo, aclaró que cualquier violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, mejor conocida como la "Ley Sobre Despidos Injustificados", 29 LPRA sec. 185a *et seq,* así como a los reglamentos internos del patrono, se encontraba expresamente cubierta por la póliza. Finalmente, sostuvo que la cláusula de exclusión invocada por Berkley debía interpretarse de forma restrictiva, en contra de la aseguradora y a favor de la parte asegurada.

El 14 de febrero de 2024, Berkley presentó su "**Réplica a la Oposición a la Moción Solicitando Sentencia Sumaria Parcial"**, en la cual esgrimió que One Alliance intentaba inducir al TPI a error mediante un análisis equivocado sobre la aplicabilidad de la póliza y sus exclusiones al caso. Destacó que la póliza emitida a favor de One Alliance establece expresamente en el endoso núm. 11 que no se consideran "damages" aquellas reclamaciones relacionadas con comisiones, bonos, beneficios o pago de mesada. Añadió que, si bien los contratos de seguro, por ser de adhesión, suelen interpretarse liberalmente a favor del asegurado, ello no autoriza extender a favor del asegurado una cláusula cuyo texto resulta claro, preciso y libre de ambigüedad en beneficio del asegurador.

El 15 de febrero de 2024, el señor Ríos presentó su "**Oposición de la Parte Querellante a Sentencia Sumaria Presentada por Berkley Insurance Company**" en la que alegó que las exclusiones de la póliza debían examinarse a la luz del marco normativo laboral y de las relaciones obrero-patronales, y no únicamente desde una perspectiva contractual. Explicó que, si el TPI interpretara que la terminación de su empleo constituye una mera cuestión contractual y, por ende, una reclamación excluida de la póliza, ello tendría el efecto de desvirtuar el propósito de este tipo de seguros. Señaló que una interpretación de esa naturaleza provocaría que todas las controversias y reclamaciones obrero-patronales que se originan en una relación laboral quedarán fuera de la cobertura de pólizas con cláusulas similares, aun cuando su fin es precisamente atender riesgos vinculados al ámbito laboral.

El 19 de febrero de 2024, One Alliance presentó su "**Breve Dúplica a Réplica a Oposición a Moción Solicitando Sentencia Sumaria Parcial instada por Berkley Insurance Company y Berkley International Puerto Rico LLC**" mediante la cual reiteró su postura y sostuvo que la referencia al manual de empleados no solo está vinculada a las alegaciones de la "**Querella Enmendada**", sino también a la exclusión de la póliza invocada por Berkley. Asimismo, afirmó que las actuaciones del señor Ríos estaban comprendidas dentro de las causas justificadas de despido, según el Manual de Empleados. Añadió que una violación a dicho manual constituye la infracción de un contrato implícito de empleo, conforme a lo dispuesto en la Parte II(J)(3) de la póliza, que define como *wrongful act* cualquier incumplimiento de contrato o acuerdo implícito relacionado con el empleo, ya surja de un manual, política institucional o representación oral. Por último, argumentó que la exclusión invocada por Berkley no resultaba aplicable a reclamaciones que se deriven de la violación de un manual de empleados, de personal o de cualquier política de empleo.

El 7 de marzo de 2024, Berkley presentó su "**Réplica a la Oposición a la Moción de Sentencia Sumaria**", señalando que la moción se limitaba a plantear controversias de cubierta sobre los actos imputados a One Alliance y al análisis de la póliza y sus exclusiones, que delimitan el deber de la aseguradora de defender e indemnizar a One Alliance, y no al señor Ríos en este litigio. Añadió que, si el foro de instancia determinara que ocurrieron los actos alegados en la "**Querella Enmendada**" correspondería a One Alliance asumir los pagos que procedan, de existir alguno, al señor Ríos por causas de acción y daños expresamente excluidos de la cubierta.

El 25 de abril de 2025, el TPI emitió una *Sentencia Parcial* mediante la cual desestimó, con perjuicio, la reclamación de discrimen por edad presentada contra One Alliance. Posteriormente, el 21 de agosto de 2025, One Alliance presentó una "**Solicitud de autorización para radicar demanda contra coparte y/o tercero**", al amparo de la Regla 11.6 de Procedimiento Civil, 32 LPRA Ap. V, R.11.6, con el propósito de demandar

a Berkley y preservar su derecho a reclamarle a su aseguradora por las reclamaciones instadas en su contra por el señor Ríos. Finalmente, el 29 de agosto de 2025, el foro de instancia declaró "No Ha Lugar" dicha solicitud.

El 3 de septiembre de 2025, One Alliance presentó una "**Solicitud de Reconsideración**" en la que argumentó que autorizar la demanda contra coparte no constituiría un abuso de discreción, pues no causaría perjuicio a las partes ni retrasaría los procedimientos al mantenerse en pie la fecha señalada para el juicio en su fondo. Los días 5 y 9 de septiembre de 2025, Berkley y el señor Ríos radicaron sus respectivas oposiciones a dicha solicitud. El 10 de septiembre de 2025 el TPI denegó la moción.

Finalmente, el 18 de septiembre de 2025 el foro de instancia dictó *Sentencia Parcial* declarando "Ha Lugar" la "**Moción Solicitando Sentencia Sumaria parcial**" presentada por Berkley. Inconforme con lo anteriormente resuelto, el Apelante presentó el recurso que nos ocupa mediante el cual le imputó al TPI la comisión del siguiente error:

> ERRÓ GRAVE Y MANIFIESTAMENTE EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA SOLICITUD DE SENTENCIA SUMARIA INSTADA POR BERKLEY Y, CONSECUENTEMENTE, RESOLVIENDO QUE LA CAUSA DE ACCIÓN POR DESPIDO INJUSTIFICADO DE LA PARTE QUERELLANTE NO ESTÁ CUBIERTA POR LA PÓLIZA EXPEDIDA A FAVOR DE ONE ALLIANCE.

El 2 de octubre de 2025, Berkley presentó "**Alegato en Oposición a Recurso de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus

disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están

en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza

Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**

En nuestra jurisdicción, el negocio de seguros está investido de un alto interés público debido a la importancia, complejidad y efecto en la economía y la sociedad. Consejo Titulares v. MAPFRE, 208 DPR 761, 773 (2022). Así como debido "al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos". R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017) citando a Natal Cruz v. Santiago Negrón *et al.*, 188 DPR 564, 575 (2013). El contrato de seguro juega un papel esencial en el ámbito comercial, toda vez que permite a las personas y a los negocios proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 897 (2012). Es precisamente por esta razón que el negocio de seguros ha sido regulado ampliamente por el Estado, a través de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico", 26 LPRA sec. 101 *et seq.* (en adelante, el "Código de Seguros" o la "Ley Núm. 77-1957").

El "contrato de seguro" se define como aquel por el que una persona se obliga a indemnizar a otra si se produce un suceso incierto previsto. Su propósito es indemnizar y proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102; R.J. Reynolds v. Vega Otero, *supra*, pág. 707; Integrand Assurance v. CODECO

*et al.*, 185 DPR 146, 162 (2012). Por su parte, la "póliza" configura el documento escrito donde se plasman los términos que rigen el contrato de seguro. Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1).

Es norma conocida que, en materia de seguros, la fuente principal de interpretación es el Código de Seguros, *supra*. Serrano Picón v. Multinational Life Ins., *supra*. Así pues, la Ley Núm. 77-1957, *supra*, dispone que "todo contrato de seguro debe interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta". Echandi Otero v. Stewart Title, 174 DPR 355, 370 (2008); Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Por tanto, nuestro más alto foro estatal ha reconocido que, como el contrato de seguros es uno de adhesión, al momento de interpretar los términos de la póliza éstos deben ser "generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". Morales Garay v. Roldan Coss, 110 DPR 701, 706 (1981). Es decir, al examinar los términos consignados en el contrato, los tribunales están llamados "a considerar los vocablos utilizados a base de su aceptación cotidiana como lo haría un ciudadano de inteligencia promedio interesado en obtener una póliza de seguro". Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898.

De igual forma, se ha establecido que aquellas cláusulas oscuras se interpretarán a favor del asegurado. Integrand Assurance v. CODECO *et al.*, 185 DPR 146, 162 (2012). No obstante, dicho principio de hermenéutica no aplicará cuando las cláusulas en cuestión resulten claras y libres de ambigüedad, haciéndose valer en tales casos la voluntad de las partes. Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 898.

Por otra parte, y debido a que nuestro ordenamiento jurídico permite que en un contrato de seguro las partes acuerden excluir ciertos eventos u ocurrencias, para poder determinar qué riesgos están cubiertos en la póliza de seguros, hay que considerar si en el contrato se incluyó una cláusula de

exclusión. Este tipo de cláusulas "limitan la cubierta provista por un seguro al exceptuar determinados eventos, riesgos o peligros". Viruet *et al.* v. SLG Casiano-Reyes, 194 DPR 271, 279 (2015). Nuestro Tribunal Supremo reconoce que "[c]omo norma general, estas cláusulas son desfavorecidas, por lo que han de interpretarse restrictivamente en contra del asegurador", a menos que la cláusula haya sido confeccionada mediante términos claros. Serrano Picón v. Multinational Life Ins., *supra*. Ello es así para poder cumplir con el propósito de todo seguro de ofrecer la mayor protección al asegurado. Echandi Otero v. Stewart Title, 174 DPR 355, 370-371 (2008).

**III.**

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia Parcial* del TPI en la que se declaró "Ha Lugar" la "**Moción Solicitando Sentencia Sumaria**" interpuesta por Berkley.

Como único señalamiento de error esgrimido, One Alliance sostiene que el TPI erró al declarar "Ha Lugar" la mencionada petición y consecuentemente resolver que la causa de acción por despido injustificado interpuesta por el señor Ríos no está cubierta por la póliza expedida a favor de One Alliance. Veamos.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

> 1. Berkley expidió una póliza de seguros "Claims Made" del tipo "Management Liability Insurance" número 23-00009436/000, a favor de One Alliance Insurance Corporation para el período de póliza del 23 de agosto de 2021 al 1 de febrero de 2022.
>
> 2. La póliza contiene una sección llamada "Employment Practices Liability Insurance Coverage Section" la cual establece como límite de responsabilidad para actos relacionados a prácticas de empleo hasta un máximo de $2,000,000.00 con un deducible de $25,000.00 sujeto a los términos,

limitaciones condiciones y exclusiones allí establecidas.

3. A través del Endoso 10, el Acuerdo de Aseguramiento ("Insuring Agreement") provee lo siguiente con relación al pago de pérdida:

"This Policy shall pay on behalf of the Insured for all Loss arising from any Claim first made against the Insureds during the Policy Period and reported to the Insurer in writing during the Policy Period or any applicable Extended Reporting Period, for any Wrongful Act."

4. La póliza define "claim" de la siguiente manera:

"Claim means a written demand for monetary or non-monetary relief or an administrative or regulatory investigation or proceeding commenced by or before a federal, state, local or foreign agency; provided, however, the term Claim shall not include any grievance or arbitration subject to a collective bargaining agreement. A Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured."

5. La Póliza define un Acto Ilícito ("Wrongful Act") de la siguiente manera:

"Wrongful Acts means any actual or alleged act by an Insured arising from an actual or potential employment relationship with the claimant for: 1. discrimination or Harassment because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, marital status, or any other basis prohibited by law which results in termination of the employment relationship, or demotion or failure or refusal to hire or promote, or failure to accommodate an Employee or potential Employee, or denial of an employment privilege, or the taking of any adverse or differential employment action; or

[…]

termination, constructive discharge, wrongful failure to hire, wrongful demotion, negligent retention, negligent supervision, negligent hiring, retaliation, misrepresentation, infliction of emotional distress, defamation, invasion of privacy, humiliation, wrongful evaluation, or breach of any implied contract or implied agreement relating to employment, whether arising out of any personnel manual, policy statement or oral representation."

6. La póliza define "Related Wrongful Acts" de la siguiente forma: "Wrongful Acts" which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision."

7. El Endoso 11 de la Póliza define "Damages" como: "[…] monetary judgment (including back pay and front pay), award, or settlement, pre-judgment interest and post-judgment interest. Damages also means,

where insurable, liquidated, punitive, or exemplary damages, or any multiplied damages award in excess of the amount so multiplied. Such coverage for liquidated, punitive, exemplary or multiplied damages is part of and not in addition to the Limit of Liability, and any payment of such damages shall serve to reduce the Limit of Liability."

8. La Póliza excluye como "Damages" lo siguiente:

"Payment of insurance, disability, pension, health or other plan benefits claimed by or on behalf of any former or current Employee, or that a claimant would have been entitled to as an Employee had the Insured Entity provided the claimant with a continuation of insurance; or

[…]

Commissions, bonuses, profit sharing, benefits or severance payment, including statutory severance and relief under P.R. law Ann. Tit.  29 sec. 185a et seq., algo known as "Law 80" or any amendments thereto; or

Future wages or benefits or any reinstated Employee or wages or benefits associated with the continued employment of an Employee; or

[…]

Any matter deemed uninsurable under the law pursuant to   which this Policy shall be construed.

9. La Póliza define "Cost of Defense" como: "B. Costs of Defense is defined as reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a covered or potentially covered Claim against the Insureds, but excluding salaries, wages, overhead or benefit expenses associated with any Insured, or any amount covered by the duty to defend obligation of any other insurer."

10. La sección III sobre Excusiones Adicionales ("III. Additional Exclusions") de la Póliza establece que: "In addition to the Exclusions listed in Section IV of the Common Policy Terms and Conditions Section, the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured:

A. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

physical injury to or destruction of any tangible property, including the loss of use thereof; or 2. bodily injury, sickness, disease, and death; provided, however, this exclusion shall not apply to the following

> personal injury damages or causes of action in connection with a Claim for a Wrongful Act for: emotional distress, mental anguish, defamation, invasion of privacy or humiliation.
>
> [...]
>
> for any actual or alleged breach of any oral or written contract or agreement relating to employment, however, this exclusion shall not apply to a Claim arising out of any actual or alleged breach of any employee handbook, personnel manual or policy statement or representation.
>
> 11. La Póliza define Pérdida ("Loss") como "Damages and Costs of Defense, as defined in each Coverage Section".

Establecido lo anterior, nos dirigimos a analizar el señalamiento de error esgrimido. En síntesis, el Apelante argumenta que la causa de acción instada por el señor Ríos es de cancelación de contrato de empleo y de despido sin justa causa y no de incumplimiento de contrato. Asimismo, arguye que, por tratarse de un contrato de empleo a tiempo determinado no son aplicables las disposiciones de la Ley Núm. 80, *supra*. Además, alega que, del TPI determinar que el despido fue uno injustificado, la póliza emitida por Berkley cubriría la reclamación, constituyendo una excepción a la exclusión de violación de contrato. No nos convence su postura. Nos explicamos.

Surge del expediente ante nuestra consideración que el 31 de enero de 2022, el señor Ríos presentó una "**Querella**" sobre: (1) cancelación de contrato de empleo, (2) discrimen por edad al amparo de la Ley Núm. 100, *supra*, (3) y violaciones a la Ley Núm. 379-1948, *supra,* en contra de One Alliance. Más adelante, tras descubrir que Berkley es la compañía aseguradora del Apelante, el señor Ríos solicitó enmendar la "**Querella**" para incluir a dicha parte y expedir los correspondientes emplazamientos. Tras múltiples incidencias procesales incluyendo la desestimación de las causas de acción referentes al alegado discrimen en el empleo y la Ley Núm. 379-1948, *supra*, Berkley presentó una "**Moción Solicitando Sentencia Sumaria**" mediante la cual le solicitó al TPI la desestimación de la causa de acción pendiente, bajo el fundamento de que la póliza no cubre reclamaciones por incumplimiento de contrato, pago del paquete de

compensación ni por daños físicos, según lo establecido en los términos, condiciones limitaciones y exclusiones de la cubierta.

Así las cosas, el 5 de enero de 2025, One Alliance presentó su *Oposición* en la cual argumentó que existían disputas reales sobre hechos medulares del caso que impedían su disposición sumaria. En particular, señaló que existía controversia respecto a si la póliza expedida por Berkley ofrecía cubierta para la reclamación del señor Ríos sobre la terminación de su contrato de empleo. El 14 de febrero de 2025, Berkley presentó su *Réplica* en la cual enfatizó que bajo el endoso núm. 11 de la referida póliza, las reclamaciones relacionadas a comisiones, bonos, beneficios o pagos de mesada no se consideran daños. Por su parte, el 15 de febrero de 2024, el señor Ríos presentó su *Oposición* en la que adujo que las exclusiones de la póliza deben evaluarse a la luz de un marco normativo laboral y no solamente desde una perspectiva contractual. Finalmente, y tras la presentación de una *Réplica* y una *Dúplica*, el 18 de septiembre de 2025, el foro de instancia emitió una *Sentencia Parcial* en la cual declaró "Ha Lugar" la "**Moción Solicitando Sentencia Sumaria Parcial**".

Es norma claramente establecida en nuestro ordenamiento jurídico que procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Moción Solicitando Sentencia Sumaria Parcial**", sus correspondientes *Oposiciones*, la *Réplica*, la *Dúplica* y la documentación anejada a dichos escritos, hemos llegado a la

conclusión de que el TPI actuó correctamente al disponer del caso por la vía sumaria, en contra de Berkley. Nos explicamos.

De entrada, es menester destacar que el señor Ríos presentó una "**Querella Enmendada**" contra One Alliance y su aseguradora Berkley, sobre cancelación de contrato, discrimen en el empleo y violaciones a la Ley Núm. 379-1948, *supra*. Luego de varias incidencias procesales, el TPI desestimó, con perjuicio, todas las causas de acción, salvo aquella relacionada con el contrato de empleo del señor Ríos. Esto es, en la actualidad, la única reclamación pendiente en contra de One Alliance es la de incumplimiento de contrato.

**Sobre el particular, debemos enfatizar que de una lectura de la "Querella Enmendada" se desprende con meridiana claridad que el señor Ríos no acumuló una causa de acción por despido injustificado. Y es que no podía ser así, toda vez que el contrato de empleo en controversia era uno con** tiempo determinado**, al cual no les son extensivas las disposiciones de la Ley Núm. 80,** *supra*. Por tanto, a la luz de las incidencias procesales del caso de autos, estamos ante un caso de un alegado incumplimiento contractual. Es, por tanto, desde esa perspectiva que se deben analizar la solicitud de sentencia sumaria, las respectivas oposiciones, réplicas y dúplicas.

En cuanto a la cobertura, la póliza de seguros Núm. 23-00009436/000 expedida por Berkley a favor de One Alliance establece que la aseguradora responderá por las pérdidas que surjan de cualquier reclamación presentada por primera vez contra los asegurados, sujeta a los términos, limitaciones y exclusiones allí contenidos.[1] La misma define "claim" como una demanda escrita solicitando remedios, ya sean monetarios o no monetarios, o una investigación administrativa o regulatoria iniciada por o ante una agencia federal, estatal, local o extranjera. **No obstante lo anterior, entre sus exclusiones, la póliza dispone de manera expresa, que no habrá cubierta para reclamaciones por incumplimiento de contratos, ya sean orales o**

---

[1] *Véase*, SUMAC-TPI, entrada núm. 146, anejo 1.

**escritos, relacionados con el empleo**. El texto de dicha exclusión es claro y el mismo lee como sigue:

> **[..] for any actual or alleged breach of any oral or written contract or agreement relating to employment**, however, this exclusion shall not apply to a claim arising out of any actual or alleged breach of any employee handbook, personnel manual or policy statement o representation.[2]

Entiéndase, de la precitada disposición se desprende manifiestamente que la póliza no protege a One Alliance frente a reclamaciones basadas en alegados incumplimientos de contratos laborales. El propósito de tal exclusión es limitar la exposición de Berkley en controversias estrictamente contractuales, reservando la cubierta únicamente para aquellas situaciones específicamente contempladas en la póliza. De ese modo, se preserva el alcance pactado entre ambos y se evita extender la protección a reclamaciones ajenas al riesgo asegurado.

En el caso de autos, el legajo apelativo demuestra que el señor Ríos fue contratado mediante un contrato de empleo escrito para ocupar la posición de presidente de One Alliance. **Ello coloca su reclamación dentro de la categoría de controversias expresamente excluidas por la póliza**. Por tanto, al armonizar el contrato de empleo con el lenguaje expreso de la póliza, no cabe concluir otra cosa que Berkley carece de obligación alguna de proveer defensa o cobertura respecto a la reclamación por cancelación del contrato laboral en controversia. Esta interpretación es consistente con la intención de las partes al suscribir la póliza y con la normativa jurisprudencial que reconoce la validez de las exclusiones en los contratos de seguro. Resolver lo contrario supondría extender indebidamente la cobertura de la póliza a un ámbito para el cual no fue concebida. Más aun cuando estamos ante un patrono que es precisamente una compañía aseguradora y que conoce los riesgos que asume al suscribir una póliza de seguros como la aquí en controversia.

Por otro lado, en su *Oposición*, el señor Ríos planteó que las exclusiones de la póliza deben examinarse a la luz del marco normativo laboral y de las relaciones obrero-patronales, y no únicamente desde una

---

[2] *Véase*, SUMAC-TPI, entrada núm. 146, anejo 1 (énfasis suplido).

óptica contractual. Sin embargo, del contenido de la "**Querella Enmendada**" no surge que el señor Ríos haya invocado una causa de acción al amparo de la Ley Núm. 80, *supra*, en contra de One Alliance. Pretender introducir ese planteamiento en su *Oposición* equivale a enmendar las alegaciones de su "**Querella Enmendada**" por vía de su oposición a la solicitud de sentencia sumaria, lo cual no está permitido por nuestro ordenamiento jurídico. *Véase*, León Torres v. Rivera Lebrón, *supra*, pág. 47. Recordemos que "**la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión**". Íd., pág. 54 (énfasis suplido). Por consiguiente, no podemos concluir que en el presente caso existe una causa de acción de despido injustificado cuando lo único alegado en la "**Querella Enmendada**" fue la cancelación del contrato de empleo.

De otra parte, en cuanto a lo argumentado por One Alliance sobre que la precitada exclusión no aplica, puesto que la cancelación del contrato del señor Ríos se efectuó por un supuesto incumplimiento por parte de este último del Manual del Empleado, sostenemos que dicha interpretación es contraria al texto específico de la póliza expedida por Berkley. Nótese que la exclusión a la inaplicabilidad de la cubierta por reclamaciones por incumplimiento contractual procede cuando dicha reclamación es por violación al manual del empleado o a cualquier política interna del patrono. Sin embargo, y según las alegaciones consignadas en la "**Querella Enmendada**", es claro que el señor Ríos no reclamó incumplimiento de contrato por violaciones al Manual del Empleado o a cualquier política interna por parte de One Alliance. Simplemente, dicha reclamación se circunscribió a que no existieron razones válidas para la cancelación de su contrato de empleo por tiempo determinado y que la misma fue violatoria de la sección cuarta de su contrato de empleo. De la "**Querella Enmendada**" no existe ninguna alegación o referencia específica a algún

incumplimiento por parte de One Alliance con su Manual de Empleado o con alguna política de interna de éste. Por tanto, de la interpretación restrictiva que debemos hacer de las exclusiones aplicables al caso de autos, concluimos que dicho argumento también es inmeritorio.

En suma, somos de la opinión de que procede la disposición sumaria de la causa de acción de cancelación de contrato de empleo instada en contra de Berkley, toda vez que la póliza expedida a favor de One Alliance excluye expresamente este tipo de controversias de su cobertura, limitando así cualquier deber de Berkley de responder o indemnizar en el presente pleito.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones